561 P.2d 757

**ARIZONA STATE TAX COMMISSION, a body corporate and politic, and John M. Hazelett, Waldo L. DeWitt and Bob Kennedy, as members constituting said Arizona Tax Commission and the State of Arizona, Appellants,**

v.

**SOUTHWEST KENWORTH, INC., an Arizona Corporation, Appellee.**

No. 1 CA–CIV 2996.

Court of Appeals of Arizona,
Division 1,
Department B.

Jan. 4, 1977.

Rehearing Denied Feb. 18, 1977.

Review Denied March 22, 1977.

Bruce E. Babbitt, Atty. Gen. by James D. Winter, Asst. Atty. Gen., Phoenix, for appellants.

Jones, Teilborg, Sanders, Haga & Parks, P. C. by David L. Haga, Jr., Arnold, Schneider, Moore & Demaree by Joseph L. Moore, Phoenix, for appellee.

## OPINION

WREN, Acting Presiding Judge.

This appeal concerns the applicability of the Transaction Privilege and Education Excise Tax, Title 42, Ch. 8, Art. 1, Arizona Revised Statutes, to the sale of certain off-highway vehicles by the appellee, Southwest Kenworth, Inc. (Kenworth). However, before reaching the merits of the tax question we must consider appellant's contention that the trial court erred in treating the verdict of the jury as advisory only.

The action is one at law and not equity and was scheduled for trial to a jury. Yet in a pretrial conference with the trial judge appellee's attorney stated that the jury was to be an advisory one. Appellant admittedly failed to comment on or object to this assertion by appellee and characterized his own conduct as amounting to "passive acquiescence" insufficient to constitute a waiver of his right to trial by jury, citing Rule 39A, Arizona Rules of Civil Procedure, 16 A.R.S. Rule 39A requires that when a jury has been demanded the jury will try the issues unless both parties stipulate in open court or in writing that the case may be tried to the court. Appellant notes that no such stipulation appears in the record and argues that he was deprived of his right to a jury trial because the verdict and answers to the special interrogatories submitted were considered by the court as being advisory only, in that the judgment rendered by the court was contra to the verdict of the jury.

 We would agree that treating the verdict and interrogatories of the jury in a non-equity case as being advisory only would, when properly objected to, amount to a denial of the right of trial by jury. However, the facts here reflect implicit consent by appellant that the jury act solely in an advisory capacity and Rule 39A is therefore inapplicable.

Contrary to the apparent suggestion by appellant, trial by an advisory jury is still a trial by jury. In an equity case the jury is always advisory yet this has been held to be sufficient to afford the parties the right to a jury trial. *Stukey v. Stephens*, 37 Ariz. 514, 295 P. 973 (1931); *Mozes v. Daru*, 4 Ariz.App. 385, 420 P.2d 957 (1966).

 The central question before us on this issue is whether the trial court acted properly in using the jury in an advisory capacity. As a general rule the verdict of the jury and answers to special interrogatories are binding on the court when the action is one at law, but are only advisory and not binding upon the court in an equitable proceeding. *Bohmfalk v. Vaughan*, 89 Ariz. 33, 357 P.2d 617 (1960). However, we

have found no authority nor has any been cited to us which would prohibit the parties and the court from agreeing to and using such a jury in a non-equity case. We believe that the record here shows that there was an implicit understanding that the jury would be advisory and the appellant is estopped from arguing to the contrary. *See Mozes v. Daru, supra; Johnson v. Neel*, 123 Colo. 377, 229 P.2d 939 (1951). The record reflects not only appellant's admission that the fact that the jury would be advisory was mentioned in chambers prior to trial, but also that special interrogatories which were to be answered "Yes", "No", or in some instances, "Undecided" were submitted to the jury without objection from appellant. Although a general verdict was also submitted, such a verdict is not inconsistent with the advisory nature of the jury. Cf. *Merryweather v. Pendleton*, 90 Ariz. 219, 367 P.2d 251 (1961). Moreover, even though the appellant received a favorable verdict, its counsel, after the return thereof, submitted a form of judgment to the court which awarded only the jury fees and did not purport to render judgment on the merits. Trial memoranda were thereafter submitted by both parties and appellant's memorandum contained this statement:

> "The ultimate question to be decided at the present time is whether or not the plaintiff, Southwest Kenworth, Inc. is entitled to a refund . . . ."

We believe this statement tacitly admits that the ultimate question of taxability was still to be decided despite the jury's verdict.

Oral arguments were heard after the trial memoranda were submitted and in a minute entry order of July 9, 1974 more than 13 months after the jury verdict, judgment was rendered in favor of appellee. Proposed findings of fact and conclusions of law were submitted by appellee, and in a memorandum in opposition thereto, appellant for the first time asserted that the verdict of the jury was binding on the court. Under the circumstances, principles of estoppel preclude this issue being raised, and the facts show implicit consent to an advisory jury.

Turning to the tax question itself, the pertinent facts are as follows:

Kenworth is an Arizona corporation engaged in the business of selling heavy-duty trucks and off-highway vehicles. It is a franchise dealer for K.W. Dart, a Kansas City truck manufacturer. In addition to sales of vehicles, Kenworth also maintains a parts and service department located in Arizona.

Sometime in 1965, Kenworth became aware that American Smelting and Refining Co. (ASARCO) and later that Kennecott Copper Co., two mining companies with corporate headquarters in New York, were in the market for some new vehicles for use in their Arizona mines. Technical employees from Kenworth and from the mines met in Arizona to work out specifications for the vehicles. Kenworth's president then entered a series of negotiations with the corporate officers in New York and there he submitted a bid for the contract. Kenworth was orally informed in New York that its bid had been accepted, and the actual purchase orders were later received in Arizona.

When the vehicles were completed they were shipped by K.W. Dart to the purchasers f.o.b. Kansas City. Invoices were sent by Kenworth when the vehicles were shipped and payment was received in Arizona. The risk of loss passed at the f.o.b. point to the purchaser, but final inspection and acceptance was to occur in Arizona, the destination point.

The trial judge concluded as a matter of law that the sale occurred outside Arizona; that the taxable event occurred outside Arizona; that the transactions were therefore interstate in nature and not subject to the Arizona transaction privilege tax.

The first issue that must be addressed is whether the sale must take place in Arizona for the transaction to be taxable. The applicable statute, A.R.S. § 42–1312A, provides, inter alia:

"A. The tax imposed by subsection A of § 42–1309 shall be levied and collected at an amount equal to two per cent of the gross proceeds of sales or gross income from the business upon every person engaging or continuing *within this state* in the business of selling any tangible personal property whatever at retail, but the tax shall not apply to the gross proceeds of sales or gross income from: . . . " (Emphasis added.)

 It has been firmly established that this tax is not one levied on the sale itself but on the privilege of engaging in business in Arizona, measured by the gross receipts from sales. *Arizona Department of Revenue v. Mountain States Telephone and Telegraph Co.*, 113 Ariz. 467, 556 P.2d 1129 (filed Nov. 3, 1976); *Tower Plaza Investments, Limited v. DeWitt*, 109 Ariz. 248, 508 P.2d 324 (1973); *State Tax Commission v. Quebedeaux Chevrolet*, 71 Ariz. 280, 226 P.2d 549 (1951). The taxable event is the engaging in *business* within the state. *Arizona State Tax Commission v. Ensign*, 75 Ariz. 220, 254 P.2d 1029 (1953).

A factual situation similar to the instant case was present in *Arizona State Tax Commission v. Ensign, supra*. The appellee was the exclusive dealer for an out-of-state manufacturer of pumps. The transactions upon which the controversy arose concerned the assessment of the privilege tax to the sale of pumps to certain large Arizona companies who did their own installation work and repairs. Orders for pumps were placed with appellee who forwarded them to the manufacturer. The manufacturer delivered them f.o.b. Los Angeles directly to the Arizona user and payment was made to appellee.

The applicable statute provided that the tax would be levied on "the gross proceeds of sales at gross income from the business upon every person engaging or continuing *within this state* in the following businesses: . . . " (Emphasis added.) A.C.A.1939, § 73–1303(c), Excise Revenue Act of 1935. The Court, in interpreting the language of the statute specifically noted:

"[T]he 2% rate upon the applicable indicia, 'gross proceeds of sales or gross in-

come', [is] without a limitation to sales made 'in the state'.

"Had the legislature intended to measure the tax by sales made only in Arizona it would doubtless have included in subsection (c) 1 the phrase 'in the state' or 'in this state', as it did in the business of transmitting long distance messages by telephone or telegraph, or of transporting for hire freight or passengers by motor vehicle or railroad, or of transporting products such as oil or gas in pipes or conduits where the transmission or movement is between points 'in this state'. Also, where the transmissions or movements are through the state or between a point inside and a point outside the state, the tax is 'imposed only upon such part of such business as is transacted or performed within the state'. See the case of *Standard Oil Co. v. Dept. of Finance*, 383 Ill. 136, 48 N.E.2d 514, 516, where the facts required the court to construe a statute similar to ours before and after an amendment. Prior to the amendment the act read in part:

" 'A tax is imposed upon persons engaged in the business of selling tangible personal property at retail in this State at the rate of three percent (3%) of the gross receipts from such sales in this State * * *.'

The amendment omitted the words 'in this State' where they appear the second time. The court held that as amended 'The omission of the words "in this State" in the amendatory act removes the limitation, as to the location where the sales must occur, that the gross receipts can be used for computing the tax.' " (75 Ariz. at 224, 254 P.2d at 1031).

The Court went on to uphold the assessment of the tax upon these sales. Although the sale technically took place in California due to the constructive delivery and transfer of title from shipment f.o.b. Los Angeles, the *Ensign* Court held that the gross proceeds of these sales may be taxed because they resulted from business activities in Arizona.

However, in *Goodyear Aircraft Corporation v. Arizona State Tax Commission*, 1 Ariz.App. 302, 402 P.2d 423 (1965), the Court of Appeals framed the issue before them in this way:

"The question presented is whether the sales were made within the State of Arizona, and therefore taxable . . . . or whether the sales were made either outside the State of Arizona or in interstate commerce. In either of these latter events the plaintiff would not be subject to the tax." Id. at 304, 402 P.2d at 425.

The only Arizona connections to the transaction were that Arizona was the place of manufacture and the product was shipped f.o.b. Litchfield Park, Arizona.

The court's analysis noted that the f. o. b. point was not in and of itself controlling as to the place of sale. The court also considered that final inspection and acceptance, delivery, and payment all took place outside the state, in Lakehurst, New Jersey. The Court concluded that title transferred and therefore the sale took place in New Jersey. The Court held that:

"Since the sale did not occur in the State of Arizona, the transaction is not subject to the Arizona tax for the reason that A.R.S. § 42–1312, subsec. A imposes a tax only upon those ' . . . engaging or continuing *within this state* in the business of selling any tangible personal property whatever at retail . . .' (Emphasis supplied.)" Id. at 305, 402 P.2d at 426.

This decision in *Goodyear* was reached without citation to any authority other than the taxing statute and without any reference to or discussion of *Arizona State Tax Commission v. Ensign, supra*. The cases are clearly conflicting, and while we believe the *Goodyear* Court reached the right conclusion, its analysis was misdirected. The focus under the *Ensign* case and the statute is on the *business activity* in the State and not upon the sale itself. In *Goodyear*, the business activity surrounding the sale occurred almost entirely outside Arizona and was therefore not subject to the privilege tax. The technical location of the transfer

of title [1] is only one factor to consider in assessing whether the transaction was a result of business activities in the state.

■ A review of several United States Supreme Court cases confirms our view that the proper focus is on the business activities surrounding the sale and that the sale need not necessarily occur in the taxing state to be constitutionally imposed. In *Gwin, White & Prince v. Henneford*, 305 U.S. 434, 59 S.Ct. 325, 83 L.Ed. 272 (1939), the Supreme Court struck down a Washington privilege tax measured by the gross receipts from the business of marketing fruit shipped from Washington to the places of sale. The tax was found to unduly burden interstate commerce not because the sale was made out-of-state but because "[a] substantial part of it [the interstate commerce service] is outside the state where sales are negotiated and written contracts of sales are executed, and deliveries and collections made." Id. at 438, 59 S.Ct. at 327. The determinative factor was the interstate business activities and not the mere fact of an out-of-state sale.

In *Norton Co. v. Department of Revenue of State of Ill.*, 340 U.S. 534, 71 S.Ct. 377, 95 L.Ed. 517 (1951), a privilege tax was upheld in a situation similar to *Arizona State Tax Commission v. Ensign, supra*. Illinois was held to have the power to include the gross proceeds from sales made f.o.b. Massachusetts to Illinois residents where the orders were placed through the Chicago office of the Massachusetts company.

Idaho's attempt to tax gasoline sales made in Utah for use in Idaho was found to violate the Due Process Clause of the Constitution in *American Oil Co. v. Neill*, 380 U.S. 451, 85 S.Ct. 1130, 14 L.Ed.2d 1 (1965). The Court implicitly recognized the possibility of taxing an out-of-state sale by noting that a corporation can exempt itself from paying the privilege tax by showing that there were no in-state activities connected with the out-of-state sales and thereby dissociate those transactions from its local business. The Supreme Court held the transaction outside the permissible scope of the privilege tax because all business activities leading up to the sale occurred outside the taxing state.

Finally, the appellee argues that *Evco v. Jones*, 409 U.S. 91, 93 S.Ct. 349 (1972), mandates that the sale take place within the state to be constitutionally taxed by that state. However, in *Evco* and in the case relied upon in *Evco, J. D. Adams Mfg. Co. v. Storen*, 304 U.S. 307, 58 S.Ct. 913, 34 L.Ed.2d 325 (1938), the tax imposed was a tax on *gross sales* of the corporations without regard to the interstate aspects of the business. Such a tax places an impermissible burden on interstate commerce because it could be levied by the state of manufacture as well as by the state of sale. This burden is not present in the transaction privilege tax because only the state where the substantial business activities occurred can tax the sale proceeds. The fact that the actual place of sale was outside the taxing state does not preclude taxation.

■ From the foregoing it is clear that under the Constitution and the Arizona statute, there is no requirement that the sale occur in Arizona before the transaction privilege tax may be imposed. Instead, the business activities which surround the sale must occur in Arizona before the assessment of the tax is permitted.

■ In the case sub judice, the sale of the trucks involved Kenworth's business activities both within and without the state. The United States Supreme Court in evaluating such cases has sought to strike a balance between two conflicting principles; that interstate commerce must be protected from undue interference from state taxation but that the commerce clause was not intended to allow such commerce to avoid paying its way. *Arizona State Tax Commission v. Ensign, supra; B.F. Goodrich Co.*

---

1. A.R.S. § 42–1301(11) defines "sale":

"11. 'Sale' means any *transfer of title* or possession, or both, exchange, barter, lease or rental, conditional or otherwise, in any manner or by any means whatever, of tangible personal property, for a consideration, and includes:" (Emphasis supplied.)

*v. State*, 38 Wash.2d 663, 231 P.2d 325 (Wash.1951). Arizona may, without unduly burdening interstate commerce, tax all revenue that is the *result* of business activities within the state. *Arizona State Tax Commission v. Ensign, supra.*

■ Where a corporation is doing business within a state and has submitted itself to the taxing power of that state, it can avoid taxation only by showing that the particular transaction is dissociated from its local business and interstate in nature. *Norton Co. v. Department of Revenue of State of Ill., supra.* If the tax is levied on the incidents of a substantial local business it is permissible. *General Motors Corp. v. Washington*, 377 U.S. 436, 84 S.Ct. 1564, 12 L.Ed.2d 430 (1964). The burden is on the taxpayer to show that the local business was not a decisive factor in capturing and holding the market and that the tax on the transaction burdens interstate commerce. *Standard Pressed Steel v. Washington Dept. of Revenue*, 419 U.S. 560, 95 S.Ct. 706, 42 L.Ed.2d 719 (1975); *General Motors Corp. v. Washington, supra; Norton Co. v. Department of Revenue of State of Ill., supra.*

As noted, Kenworth is an Arizona corporation with the majority of its employees located in Arizona. It maintains a parts and service division in Phoenix for the purpose of servicing equipment sold to customers after the expiration of the manufacturer's warranty. The company president testified that this parts and service constituted a vital part of Kenworth's business, and that parts representatives made regular visits to the mines. Additionally, during the pertinent time period, Kenworth's off-highway sales manager also regularly visited the mines to maintain a good relationship and to determine possible needs.

■ Regarding the specifics of the sales to Kennecott and ASARCO, the specifications for the equipment were worked out with mine personnel in Arizona, the vehicles were custom-made for use in each particular Arizona mine, purchase orders were accepted at the Phoenix office and invoicing and payment went through the Phoenix

office of Kenworth. In addition, final inspection and acceptance occurred at the mine sites. New York's connections with the transaction were that it was the place of contract negotiations, submission of bids and oral acceptance of Kenworth's bid. Initial inspection, constructive delivery and transfer of title and risk of loss occurred in Kansas City, Missouri.

Weighing the various factors, we can only conclude that the trial judge erred in finding that the taxable event occurred outside Arizona and that the sale was interstate in nature. The transaction involved the sale by an Arizona corporation to a New York corporation of equipment to be used exclusively at Arizona mines. There was a continuing relationship between the mine employees and Kenworth in that parts and service were provided by Kenworth personnel. The out-of-state activities were only incidental to Kenworth's business activities within Arizona. The service offered by Kenworth was admittedly significant in capturing and holding the market. The taxpayer has not shown any risk of multiple taxation nor any undue burden on interstate commerce resulting from the imposition of the Arizona transaction privilege tax. As a matter of law, we hold that the sales were a result of Southwest Kenworth's in-state business activities and, despite the interstate aspects of the transaction, it could still be constitutionally taxed.

The judgment in favor of Southwest Kenworth is reversed and judgment entered in favor of the State Tax Commission.

EUBANK and FROEB, JJ., concurring.