23 P.3d 684

**ARIZONA DEPARTMENT OF REVENUE, Plaintiff– Appellee,**

v.

**CANYONEERS, INC., WG & S Inc., Arizona River Runners, Inc., Western River Expeditions, Colorado River and Trail Expeditions, Inc., Defendants–Appellants.**

Nos. 1 CA–TX 00–0016, 1 CA–TX 00–0017, 1 CA–TX 00–0018, 1 CA–TX 00–0019.

Court of Appeals of Arizona, Division 1, Department T.

May 17, 2001.

As Amended May 24, 2001.

Janet Napolitano, Attorney General, by Lisa A. Neuville, Assistant Attorney General, Phoenix, Attorneys for Plaintiff–Appellant.

The Cavanagh Law Firm, P.A., by Peter C. Guild, Christopher Robbins, Phoenix, Attorneys for Defendants–Appellants.

## OPINION

RYAN, Judge.

¶ 1 The question we must answer in this appeal is whether the Arizona Department of Revenue ("the Department") can refuse to refund sums or place a condition on any refund of sums remitted as payments for transaction privilege taxes on an activity that later was found not taxable. We hold that the Department can neither refuse to refund such payments nor can it condition any refunds on the taxpayer's agreement to pass on the refunds to its customers. Therefore, we reverse.

## FACTUAL AND PROCEDURAL HISTORY

¶ 2 In the early 1980s, the Department began assessing transaction privilege taxes against river raft trip providers under the amusement classification. *See* Arizona Revised Statutes ("A.R.S.") § 42–5073 (1999) [1] (formerly A.R.S. section 42–1310.13 (1991)). In June 1989, this court held that gross income from such business activities was within that classification and thus taxable. *Dep't of Revenue v. Moki Mac River Expeditions, Inc.*, 160 Ariz. 369, 373, 773 P.2d 474, 478 (App.1989).

---

**1.** To facilitate application of this opinion in the future, we use the relevant statutes' current num-bering unless the context requires otherwise.

¶ 3 Between October 1992 and May 1996, the appellants, Canyoneers, Inc., WG & S, Inc., Arizona River Runners, Inc., Western River Expeditions, and Colorado River and Trail Expeditions, Inc., engaged in the business of providing guided rafting trips through Grand Canyon National Park on the Colorado River. Each appellant charged its customers set fees for river trips with separately stated charges for "sales tax." Other river rafting businesses, not parties to this litigation, remitted taxes to the Department under the amusement classification but did not separately state charges for taxes on their customers' bills. The appellants reported their river trip receipts to the Department as gross income under the amusement classification and remitted all sums charged as "sales tax."

¶ 4 In December 1993, this court overruled *Moki Mac* and held that the business of providing river rafting trips was not within the amusement classification and therefore not subject to transaction privilege taxation. *Wilderness World Inc. v. Dep't of Revenue*, 180 Ariz. 155, 156–58, 882 P.2d 1281, 1282–84 (App.1993), *aff'd in part, rev'd in part on other grounds*, 182 Ariz. 196, 895 P.2d 108 (1995). The supreme court rejected the Department's request that it declare its holding to be prospective only. *Wilderness World*, 182 Ariz. at 201, 895 P.2d at 113.

¶ 5 In October 1994, appellants Arizona River Runners, Inc., Canyoneers, Inc., and WG & S, Inc., filed refund claims for the four-year period then open under the statute of limitations. The Department unconditionally granted these claims for periods before September 30, 1992.[2] In 1995 and 1996, all appellants filed new refund claims covering all periods then open. In response, and as a condition to granting the refund, the Department's Transaction Privilege and Use Tax Audit Section demanded that the appellants provide satisfactory assurances that all of the amounts refunded by the Department would be returned to the customers who had paid the "sales tax" reflected on the appellants' customer invoices.

¶ 6 Representatives of the Department advised appellants Canyoneers, Inc., WG & S, Inc., and Arizona River Runners, Inc., that this condition had been imposed because the tax had been itemized as a sales tax on customer receipts. The representatives further advised that unconditional refunds were paid to all river rafting concerns that had not given receipts to their customers or had not itemized tax on customer receipts, regardless of whether they had told their customers that the tax was included in the price.

¶ 7 The appellants challenged this condition on the refunds and declined to comply with it. The Transaction Privilege and Use Tax Audit Section in turn denied their refund claims. Two administrative law judges in the State Office of Administrative Hearings considered and sustained the appellants' protests. The Section appealed to the Department Director, who vacated the administrative law judges' decisions and upheld the refund denials. On appeal by the appellants, the Arizona Board of Tax Appeals vacated the Department's final orders and held that the appellants were entitled to unconditional refunds.

¶ 8 The Department then commenced these consolidated tax court appeals. On cross-motions for summary judgment, the tax court ruled for the Department. The court concluded from A.R.S. section 42–5002(A)(1), from *Arizona State Tax Comm'n v. Garrett Corp.*, 79 Ariz. 389, 291 P.2d 208 (1955), and from the current and historical statutory schemes, that the law discouraged

---

2. Before September 30, 1992, the prevailing statute provided in pertinent part: "In no event shall the **person upon whom the tax is imposed**, when an added charge is made to cover the tax levied by this article, remit less than the amount so collected to the department." A.R.S. § 42–1302(A)(1)(1991) (current version at A.R.S. § 42–5002(A)(1) (1999)) (emphasis added).

Effective September 30, 1992, the Legislature rewrote the last sentence of A.R.S. section 42–1302(A)(1) to provide: "A **person who imposes** an added charge to cover the tax levied by this article or which is identified as being imposed to cover transaction privilege tax shall not remit less than the amount so collected to the department." (Emphasis added.) 1992 Ariz. Sess. Laws, ch. 173, § 1. The Department evidently concluded that the pre-amendment version of the statute did not apply unless the business activities of the person who made the added charge for tax were actually within a transaction privilege tax classification.

taxpayers from shifting the transaction privilege tax burden to their customers, and that taxpayers were not entitled to refunds of such taxes unless they could show that the refunds would go back to the customers who had borne the economic burden. The appellants appealed.

## DISCUSSION

### Meaning of A.R.S. section 42–5002(A)(1)

■ ¶ 9 This appeal turns on the meaning of the last sentence of A.R.S. section 42–5002(A)(1), which states the following: "A person who imposes an added charge to cover the tax levied by this article or which is identified as being imposed to cover transaction privilege tax shall not remit less than the amount so collected to the department." The appellants argue that they are entitled to full, unconditional refunds under A.R.S. section 42–1118(A) (1999), which states that the Department must credit or refund any amount of tax, interest, or penalty that it has determined was "paid in excess of the amount actually due." In response, the Department contends that when a person charges an amount to his customer as "tax," that amount is "actually due" under A.R.S. section 42–5002(A)(1) and therefore not refundable under A.R.S. section 42–1118(A). We conclude that the Department's analysis is based on a mistaken interpretation of *Garrett* and A.R.S. section 42–5002(A)(1).

¶ 10 Initially, we observe that the language of A.R.S. section 42–5002(A)(1) does not support the legal distinction the Department has made between tax charges that are separately stated and those that are not. Under section 42–5002(A)(1), the sums that must be remitted comprise both those that are "**identified** as being imposed to cover transaction privilege tax" and those that are simply "**added** ... to cover the tax levied by this article." (Emphasis added.) Thus, the statutory language encompasses any sum that the seller incorporates into or adds onto the price to cover transaction privilege taxes, whether or not separately stated as "tax." The Department itself accepts the practice of calculating a unitary gross price so that it includes an amount to cover transaction privilege tax ("factoring in" the tax). Arizona

Administrative Code R15–5–2210, R15–5–2210.01 (2000). Therefore, the tax court's conclusion that the law discourages vendors from shifting the economic burden of transaction privilege taxation to their customers was incorrect.

¶ 11 The cornerstone of the tax court's ruling, and the Department's position on appeal, is that under A.R.S. section 42–5002(A)(1), any amount collected from a customer for transaction privilege taxes is immutably fixed as an "amount due and owing" to the state without regard to the collector's actual liability for transaction privilege tax. In support of this proposition, the Department cites the following description by the *Garrett* court of the predecessor to A.R.S. section 42–5002(A)(1):

> In the event the amount charged by the seller-if he adopts the practice of adding the tax as a separate item in the sale price to the purchaser's bill-is greater than two percent of the seller's annual gross proceeds of sale [applicable state tax rate during the relevant period], **then that amount is the amount of the tax.** But, if the amount charged against the purchaser is less than two percent of the seller's annual gross proceeds of sale or gross income then two percent is still the ultimate measurement of the taxpayer's liability.

79 Ariz. at 392, 291 P.2d at 210 (emphasis added).

¶ 12 The Department's reliance on this language overlooks the context in which it appeared in the *Garrett* opinion. In *Garrett*, the taxpayer was a seller of goods to the United States Government. The seller contended that the "added charge" language in the predecessor to A.R.S. section 42–5002(A)(1) changed the character of Arizona's transaction privilege tax to that of a true "sales tax," and therefore invalidly imposed a direct tax on the United States Government. The Arizona Supreme Court disagreed and held that the amendment did not shift the legal incidence of the tax from seller to buyer, in effect reversing judgment for the taxpayer. *Id.* at 393, 291 P.2d at 210–11.

¶ 13 The *Garrett* court was not concerned with whether the activity for which taxes were collected and remitted was outside the taxing statute entirely. The assumption underlying the court's discussion was that the tax in question applied, but the taxpayer passed through to its customer an amount greater than the tax it actually owed on the transaction. *See id.* ("[T]he seller is prevented from profiting at the expense of the purchaser under the guise of a compulsory tax."). In that context, *Garrett's* statement that an amount the seller charges for tax in excess of the statutory percentage "is the amount of the tax" meant only that the taxpayer could not keep the excess, but rather had to remit it along with the amount that the statutory tax rate would have yielded.

¶ 14 *Garrett's* discussion cannot be characterized as mere dictum, as the appellants would have us hold. But its context demonstrates that it does not stand for the proposition that the statute itself imposes a substitute tax equal to the full amount passed through to the customer as tax. The Department's position would extend A.R.S. section 42–5002(A)(1) beyond the reach of its underlying preventive rationale. The statutory objective of frustrating the practice of adding extra profit to a sale "under the guise of a compulsory tax" is fully accomplished by denying a refund of the sum by which the amount charged as tax exceeds the actual tax due on the transaction.

■ ¶ 15 For these reasons, we conclude that the Department's interpretation of A.R.S. section 42–5002(A)(1) is erroneous. Instead, we conclude that the interpretation that accords with the legislative intent underlying A.R.S. section 42–5002(A)(1) is that the statute imposes, in effect, an additional tax limited to the difference between (1) the amount charged to the customer for tax and (2) the amount calculated as the product of the statutory tax rate and the price that the customer paid for the item or service sold. *See* A.R.S. § 42–5028 (1999) (stating that a person who fails to remit "additional charge" for tax is "personally liable for the total amount of the additional charge so made and not accounted for or paid over"). When these amounts are the same, as here, no additional tax would be incurred under A.R.S. section 42–5002(A)(1) and all amounts remitted as tax would be refundable upon proof of appropriate legal grounds. But when more was collected and remitted than was apparently due according to the statutory tax rate, only that amount would be potentially refundable, and the Department would be entitled to retain any excess.[3]

¶ 16 The Department argues, however, that the 1992 amendment to A.R.S. section 42–5002(A)(1) contradicts this interpretation. *See supra* note 2. Before that amendment, the statute imposed the duty to remit all sums collected from customers for taxes only upon "the person upon whom the tax is imposed." The 1992 amendment extended that duty to any "person who imposes an added charge to cover the tax levied by this article or which is identified as being imposed to cover transaction privilege tax." According to the Department, this amendment demonstrates a legislative intent to prohibit any person, whether otherwise subject to transaction privilege tax or not, from achieving financial gain under the guise of a mandatory tax.

¶ 17 The Department is correct to the extent that the 1992 amendment extended to all persons the duty to remit any sums collected as taxes. However, the duty imposed on such persons is only to "remit" such sums to the Department in the first instance. Nothing in A.R.S. section 42–5002(A)(1), or the *Garrett* court's interpretation of that statute's predecessor, states anything about whether the sums remitted may be subject to refunding in whole or in part. An interpretation that all sums so remitted are essentially forfeited to the state must be based on some statutory authority. *See, e.g., RDB Thomas Road P'ship v. City of Phoenix*, 180 Ariz. 194, 196, 883 P.2d 431, 433 (App.1994) (citation omitted). The Department has not brought any such authority to our attention, nor from our reading of the statutes do we find any.

¶ 18 Additionally, the Department's analysis assumes that the Legislature might rea-

---

**3.** This interpretation avoids any incentive for retailers to overstate the tax.

sonably have perceived a danger that sellers of goods or services, whose business activities were not subject to transaction privilege taxation, would deliberately choose to include fictitious "tax" charges in their prices to increase their profits. We find the Department's assumption unwarranted. A seller whose business is not subject to transaction privilege taxation is free to raise his prices to the level the market will bear. The seller has no need to do so by charging extra sums for tax. Moreover, by doing so, the seller exposes himself to liability for statutory and common law fraud. We cannot conceive that the Legislature had so unlikely a scenario in mind when it amended A.R.S. section 42–5002(A)(1) in 1992.

¶ 19 Finally, the tax court's ruling implied that the appellants' refunds were justly denied because "[t]hey chose to gain an advantage over their competitors by quoting a lower price, and thereby reaping a benefit by stating the tax separately from the price." We have examined the record on appeal in some detail and have been unable to find anything that supports this finding. We have accordingly disregarded it in our analysis.

### The Department's Authority to Make Conditional Refunds

■■■ ¶ 20 According to A.R.S. section 42–1118(A), the Department must credit or refund any amount of tax, interest, or penalty that it has determined was "paid in excess of the amount actually due." The liability to pay transaction privilege taxes rests on the person whose business activities generate the gross receipts or gross income by which the tax is measured, and not on the sale itself. *See Garrett,* 79 Ariz. at 393, 291 P.2d at 210–11.

¶ 21 In processing the appellants' refund claims, the Department conditioned the refunding of sums collected and remitted on the appellants' providing assurances that they would return the refunded sums to their customers. When the appellants refused to do so, the Department denied their refund claims. The Department Director's final decision concluded that "if the amount cannot

be returned to the customer," then it was an overpayment and that amount, therefore, is "an amount collected which must be remitted to the department." As we have held, however, A.R.S. section 42–5002(A)(1) focuses strictly on tax charges collected and remitted in excess of the sums due on the transactions in question under the statutory tax rate. In these cases, no sums in excess of the taxes then assumed to be owed under the amusement classification were collected and remitted to the Department.

¶ 22 Furthermore, the Legislature, on several occasions, has chosen to expressly condition the payment of refunds of transaction privilege taxes on taxpayer assurances acceptable to the Department that they will return the refunded sums to their customers. *See, e.g.,* 1995 Ariz. Sess. Laws, ch. 138, § 4(A), (B)(2) (conditioning retroactive refunds of retail transaction privilege taxes on certain machinery sales upon proof satisfactory to the Department that refunded taxes will be returned to the customer); 1994 Ariz. Sess. Laws, ch. 174, § 2(A), (B) (same as to certain personal property sales through liquidators); 1993 Ariz. Sess. Laws, ch. 240, § 2(A), (B) (conditioning refunds of certain telecommunication charges upon proof satisfactory to the Department that the monies paid as taxes be returned to the customer). If the Legislature had intended that A.R.S. sections 42–1118(A) and 42–5002(A)(1) permit the Department to condition refunds on proof that they would be returned to customers, it surely would have perceived no need for these enactments.

¶ 23 Thus, there is no clear authority for the Department to condition any refunds here upon the appellants' assurances to return those sums to their customers. *See, e.g., Cochise County v. Arizona Health Care Cost Containment Sys.,* 170 Ariz. 443, 445, 825 P.2d 968, 970 (App.1991) (stating that the scope of an agency's power is measured by statute and "may not be expanded by agency fiat") (citation omitted). And on the facts of this case, A.R.S. section 42–5002(A)(1) conferred no such legal authority on the Department.[4]

4. We therefore need not consider whether A.R.S. section 42–5002(A)(1) violated the appellants'

## CONCLUSION

¶ 24 The appellants request awards of attorneys' fees incurred in the tax court and on appeal pursuant to A.R.S. section 12–348(B) (Supp.2000). We grant the request, subject to the limitations imposed by A.R.S. section 12–348(D) and (E)(3) and (5). The appellants may establish the amount of their awards by complying with the provisions of Rule 21(c), Arizona Rules of Civil Appellate Procedure.

¶ 25 Reversed and remanded for further proceedings consistent with this opinion.

due process or equal protection rights as applied

CONCURRING: SHELDON H. WEISBERG, Presiding Judge and RUDOLPH J. GERBER, Judge.