110 P.3d 1031

**DAIMLERCHRYSLER SERVICES NORTH AMERICA, LLC, as successor to Chrysler Financial Company, LLC, Plaintiff/Appellant,**

v.

**ARIZONA DEPARTMENT OF REVENUE, Defendant/Appellee.**

No. 1 CA–TX 04–0012.

Court of Appeals of Arizona, Division 1, Department T.

May 3, 2005.

Steptoe & Johnson, LLP By Patrick Derdenger, Bennett Evan Cooper, Randall T. Evans, Phoenix, and Akerman Senterfitt By Peter O. Larsen, Kirby D. Oberdorfer, Jacksonville, FL, Attorneys for Plaintiff–Appellant.

Terry Goddard, Attorney General By John William Ranby, Assistant Attorney General, Steven R. Partridge, Assistant Attorney General, Phoenix, Attorneys for Defendant–Appellee.

## OPINION

BARKER, Judge.

¶ 1 The question in this case is whether a bad debt deduction under Arizona Administrative Code R15–5–2011 is limited to the vendor of goods to which the debt applies. We hold that it is, unless the assignment of contract rights pertaining to the goods is made with recourse against the vendor. Accordingly, we affirm.

*Facts and Procedural Background*

¶ 2 DaimlerChrysler Financial Services North America, LLC ("DaimlerChrysler") purchased retail installment contracts from car dealers ("the Dealers") arising from consumer automobile purchases between 1997 and 1999.[1] In the scenario represented by this appeal, consumers purchased vehicles from one of the Dealers. At that same time, the consumers agreed to financing for their vehicles through DaimlerChrysler. The Dealers also simultaneously assigned rights to DaimlerChrysler. As part of the contractual arrangement, those portions of the purchase price for each vehicle, as well as the transaction privilege tax and any other items that the consumer did not directly pay, were funded through the monies provided by DaimlerChrysler.

¶ 3 DaimlerChrysler's representative described the financing process as follows:

Chrysler Financial Company [DaimlerChrysler] would cut a check to the dealership and essentially step into the shoes of the dealer with respect to this transaction and then at that point, the customer will be paying off the loan to Chrysler Financial.... [I]n determining the amount that Chrysler pays for the contract, what they do is take the purchase price of the car, they add the transaction privilege tax to it, any other miscellaneous things that the customer purchases at the dealership such as credit life insurance for example, and that's all added up and that's the amount that Chrysler pays the dealer for the contract. So what's happening is, the amount of the transaction privilege tax is reported, I agreed with respondent that it is recorded on the sales tax return of the automobile dealership, but the cash comes from Chrysler. Chrysler gives the cash to the dealership pursuant to its agreement with the dealer. The dealer takes that cash and reports it to the state on its transaction privilege tax return.

Thus, DaimlerChrysler did not separately pay or report any tax on the income from the assigned contracts. However, Daimler-

1. This matter is before us based on the grant of summary judgment against DaimlerChrysler. Accordingly, we review the facts in the light most favorable to DaimlerChrysler. *Martin v. Schroeder*, 209 Ariz. 531, 532, ¶ 2, 105 P.3d 577, 578 (App.2005).

Chrysler provided monies to the Dealers to satisfy the Dealers' obligations for transaction privilege taxes that the Dealers had passed along to consumers. The Dealers then reported the tax in the month of the sale and paid it.

¶ 4 As to the assignment, DaimlerChrysler agreed to pay the face value for the contracts without recourse against the Dealers in the event that the consumer defaulted on the loan. The assignment from the Dealers was as follows:

> Seller hereby assigns to the below designated Assignee under the terms and conditions of a Dealer Agreement (☐Recourse }Non–Recourse) previously entered into between Seller and Assignee, and in any event in accordance with the terms, conditions and warranties of the Seller's Assignment and Warranty on reverse side hereto.

Though the assignment references other terms, they are not in the record.[2]

¶ 5 Some of the consumers defaulted on the vehicle loans. The debts went uncollected notwithstanding enforcement efforts. As to these debts, DaimlerChrysler filed a claim for a bad debt deduction or refund with the Arizona Department of Revenue ("ADOR") pursuant to R15–5–2011. The total amount of the claim was $666,829.05. ADOR disallowed the claim. DaimlerChrysler protested the denial to the Office of Administrative Hearings. After adopting the parties' Joint Stipulation of Facts, the administrative law judge affirmed ADOR's decision.

¶ 6 In accordance with Arizona Revised Statutes ("A.R.S.") section 42–1254(C) (1999), DaimlerChrysler filed a complaint and notice of appeal with the Arizona Tax Court on August 16, 2002. It moved for partial summary judgment on the issue of its entitlement to a bad debt deduction or refund. The tax court denied the motion. Though ADOR

did not cross-move for summary judgment, the parties agreed that the tax court's ruling entitled ADOR to summary judgment in its favor. Accordingly, the court entered judgment in favor of ADOR. This appeal followed.

### Discussion

¶ 7 This court reviews de novo the tax court's ruling on the motion for summary judgment. *Wilderness World, Inc. v. Dep't of Revenue*, 182 Ariz. 196, 198, 895 P.2d 108, 110 (1995). Because the material facts are not disputed, our task is to determine whether the tax court correctly applied the substantive law to those facts. *S. Pac. Transp. Co. v. Ariz. State Dep't of Revenue*, 202 Ariz. 326, 329–30, ¶ 7, 44 P.3d 1006, 1009–10 (App. 2002).

¶ 8 DaimlerChrysler argues it is entitled to take the bad debt deduction on two different theories: first, that it is entitled to the bad debt deduction in its own right; second, that it is entitled to the bad debt deduction based on an alleged assignment of a dealer's right to the bad debt deduction to DaimlerChrysler. Additionally, DaimlerChrysler contends that the failure to allow it a bad debt deduction works an unlawful forfeiture. We address each issue in turn.

### 1. DaimlerChrysler Does Not Independently Satisfy the Bad Debt Deduction Requirements of R15–5–2011.

#### A. The Regulation and Principles of Regulatory Interpretation.

¶ 9 Under R15–5–2011, a bad debt deduction "shall be allowed" if certain conditions are met. First, section (A) provides that a bad debt deduction shall be allowed for a qualifying debt when taxes have been reported on the gross receipts from the transaction, and the debt is worthless, in whole or part.[3]

---

**2.** The "Dealer Agreement" referenced in the assignment is not in the record. Additionally, the "terms, conditions and warranties of the seller's assignment," that are referenced as being on the "reverse side," were not included. We have no ability to evaluate what impact these terms may or may not have on this matter. Thus, we deal with the terms of the assignment as provided to us. Those terms are reflected in the single paragraph that is quoted.

**3.** R15–5–2011(A) and (E) provide in full as follows:

> A. The deduction of a bad debt shall be allowed from gross receipts if the following conditions apply:
> 1. The gross receipts from the transaction on which the bad debt deduction is being taken have been reported as taxable;
> 2. The debt arose from a debtor-creditor relationship based upon a valid and enforceable

Second, section (E)(1) mandates a bad debt deduction when provisions applicable to conditional or installment sales are met. Finally, section (E)(2) allows a bad debt deduction on installment contracts sold to a third party with recourse. In that circumstance, section (E)(3) requires that the vendor remain liable to the third party assignee to make principal payments to the third party in the event of default by the original payor (the consumer).

¶ 10 DaimlerChrylser argues that sections (A) and (E)(1) allow it to take a bad debt deduction independent of any assignment. It maintains that sections (A) and (E)(1) are written in the passive voice and that the sections fail to specify who is entitled to the bad debt deduction. Specifically, Daimler-Chrysler contends that none of the express provisions under sections (A) or (E)(1) require that only *vendors* of the goods in question (in this case the Dealers) are entitled to take the bad debt deduction. DaimlerChrysler argues that ADOR and the tax court inappropriately added this requirement to the language of an otherwise clear regulation.

¶ 11 On the other hand, ADOR argues, and the tax court found, that the intent of R15–5–2011 "is to give a deduction to the retailer that sells the car and receives its full purchase price from the customer at the time of the sale." The tax court concluded that the regulation "contemplates that the party claiming the deduction is the party who reported the original transaction as part of its gross receipts and paid the transaction privilege tax thereon."

¶ 12 The resolution of this issue turns on the construction we give R15–5–2011. Generally, the principles of construc-

obligation to pay a fixed or determinable sum of money; and

3. All or part of the debt is worthless.

\* \* \*

E. A bad debt deduction shall be allowed, pursuant to the provisions in this rule, on conditional or installment sales if:

1. The tax liability is paid on the full sales price of the tangible personal property at the time of the sale; or

2. A contract or other financial obligation is sold to a third party as a sale with recourse and principal payments are made by the vendor to the third party, pursuant to the

tion that apply to statutes apply with equal force to administrative rules and regulations like R15–5–2011. *Kimble v. City of Page,* 199 Ariz. 562, 565, ¶ 19, 20 P.3d 605, 608 (App.2001); *Marlar v. State,* 136 Ariz. 404, 410, 666 P.2d 504, 510 (App.1983). Thus, "[i]n interpreting a statute [or regulation], we first look to the language of the statute [or regulation] itself. Our chief goal is to ascertain and give effect to the legislative [or regulatory] intent." *Scottsdale Healthcare, Inc. v. Ariz. Health Care Cost Containment Sys. Admin.,* 206 Ariz. 1, 5, ¶ 10, 75 P.3d 91, 95 (2003) (citing *Zamora v. Reinstein,* 185 Ariz. 272, 275, 915 P.2d 1227, 1230 (1996)). Our law provides that "[i]n discerning legislative [or regulatory] intent, we look to the statute's [or regulation's] policy, the evil it was designed to address, its words, context, subject matter, and effects and consequences." *Logan v. Forever Living Prods. Int'l, Inc.,* 203 Ariz. 191, 194, ¶ 10, 52 P.3d 760, 763 (2002). In particular, when construing a regulation "[w]e consider individual provisions in the context of the entire statute" as well as the statutory or regulatory scheme. *Burlington N. & Santa Fe Ry. Co. v. Ariz. Corp. Comm'n,* 198 Ariz. 604, 607, ¶ 15, 12 P.3d 1208, 1211 (App.2000).

¶ 13 For the reasons that follow, we are persuaded that applying these principles in this case to R15–5–2011(A) and (E)(1) does not allow DaimlerChrysler, as a purchaser of retail contracts, to take a bad debt deduction when it has purchased the contracts without recourse against the Dealers.

### B. Application of the Pertinent Interpretive Principles.

¶ 14 We first look at the express language of R15–5–2011. As DaimlerChrysler points

default of the original payor. Such principal payments may be taken as a bad debt deduction if the tax was paid by the vendor on the original sale of the tangible personal property or on the subsequent sale of the financing contract.

3. For purposes of the bad debt deduction in situations of default on conditional or installment sales, a "sale with recourse" means that a vendor sells a contract or other financial obligation to a third party but retains liability for payment upon default of the original payor.

out, the language of neither R15–5–2011(A) nor (E)(1) makes an express reference to "vendor." However, the defined terms used within those provisions demonstrate·that the regulation cannot be satisfied by a person other than a vendor. We focus on the requirement in section (A) that the bad debt deduction "shall be allowed from *gross receipts.*" R15–5–2011(A) (emphasis added).

¶ 15 By way of background, Arizona's transaction privilege tax is imposed upon the "privilege of engaging in business" here, and is "measured by the [business entity's] *gross receipts." Ariz. State Tax Comm'n v. Southwest Kenworth, Inc.,* 114 Ariz. 433, 436, 561 P.2d 757, 760 (App.1977) (emphasis added). As the United States Supreme Court recognizes, a transaction privilege tax differs from a sales tax:

> We follow standard usage, under which gross receipts taxes are on the gross receipts from sales payable by the seller, in contrast to sales taxes, which are also levied on the gross receipts from sales but are payable by the buyer (although they are collected by the seller and remitted to the taxing entity).

*Okla. Tax Comm'n v. Jefferson Lines, Inc.,* 514 U.S. 175, 179 n.3, 115 S.Ct. 1331, 131 L.Ed.2d 261 (1995);[4] *accord Ariz. Dep't of Revenue v. Canyoneers, Inc.,* 200 Ariz. 139, 144, ¶ 20, 23 P.3d 684, 689 (App.2001) ("The liability to pay transaction privilege taxes rests on the person whose business activities generate the gross receipts or gross income by which the tax is measured, and not on the sale itself.").

¶ 16 "Gross receipts," as used in R15–5–2011(A), is a statutorily defined term. A.R.S. § 42–5001(7) (2004).[5] According to that definition, " '[g]ross receipts' means the total amount of the sale, lease or rental price, as the case may be, of the *retail sales of retailers* . . . ." A.R.S. § 42–5001(7) (emphasis added). The term "retailer" is also statutorily defined: " 'Retailer' includes every person engaged in the business" "of selling tangible personal property at retail." A.R.S. §§ 42–5001(12), –5061(A) (2004). Thus, although R15–5–2011(A) does not expressly state that the bad debt deduction is available only to "retailers," the statutorily defined terms used by the regulation, impose that requirement. We do not judicially superimpose a "retailer" or "vendor" requirement, as DaimlerChrysler argues. Rather, the defined terms the legislature has mandated make such a construction necessary.

¶ 17 DaimlerChrysler contends, however, that it *is* a retailer. Indeed, the record shows that DaimlerChrysler generated "gross receipts" from automobile sales in Arizona. It is also uncontested, however, that these sales are *not* the sales against which a bad debt deduction is sought in this case.

¶ 18 In essence, DaimlerChrysler argues that because it is also engaged in the business of retail sales, it satisfied any requirement that it be a vendor for the sales that are at issue. This argument is unpersuasive. In considering a proposed regulatory construction, we must consider its "effects and consequences." *See Logan,* 203 Ariz. at 194, ¶ 10, 52 P.3d at 763. DaimlerChrysler's construction˙would result in different outcomes for an entity such as a bank (that did not independently have gross receipts from retail sales) and a diversified company (that had both retail sales and also purchased retail contracts). Under DaimlerChrysler's theory, the diversified company could take a bad debt deduction while the bank could not. We find no support for such differing effects and consequences in either the language or context of the statute. Such a construction is also contrary to DaimlerChrysler's contention that it be treated as a retailer (or assignee) only for purposes of the bad debt deduction pertaining to the goods but not the tax liability flowing from the sale of the goods.

---

4. As discussed in *Tri–State Coach Lines, Inc. v. Metropolitan Pier & Exposition Authority,* 315 Ill.App.3d 179, 247 Ill.Dec. 805, 732 N.E.2d 1137 (2000), for reasons other than this proposition, the passage of the Interstate Commerce Commission Termination Act of 1995 overruled *Jefferson Lines.*

5. The relevant statutes were renumbered in 1999. Because there were no substantive changes made, we cite to the statutes at their current location.

*Infra* ¶ 27. Also, under DaimlerChrysler's analysis, the request for a refund to be paid to it, as contrasted with the retailer who generated the gross receipts, is directly contrary to A.R.S. § 42–1118(A) (Supp.2004), which requires a refund be paid "to the taxpayer from whom it was collected." *Infra* ¶ 28.

¶ 19 The analysis we set forth herein as to R15–5–2011(A) also applies to DaimlerChrysler's claim under section (E)(1) of that regulation. Section (E)(1) provides that "[a] bad debt deduction shall be allowed, *pursuant to the provisions in this rule,* on conditional or installment sales" under certain conditions. (Emphasis added.) Section (E)(1) also requires that the tax liability be paid on the full sales price at the time of the sale. DaimlerChrysler correctly points out this portion of section (E)(1) was satisfied. What DaimlerChrysler does not adequately address, however, is that section (E)(1) expressly incorporates "the provisions in this rule." Those "provisions" include the reference to gross receipts in section (A) which is statutorily tied to the requirement that one be a retailer. *Supra* ¶¶ 16–18.

¶ 20 Accordingly, DaimlerChrysler has no independent right to a bad debt deduction under R15–5–2011(A) or (E)(1).

### 2. *DaimlerChrysler Is Not Entitled to a Bad Debt Deduction in Its Capacity as the Dealers' Assignee.*

¶ 21 DaimlerChrysler alternatively argues that the assignment allows it to stand in the shoes of the Dealers and claim the bad debt deduction in that manner. The tax court also rejected this argument. It determined the Dealers received full compensation when they sold the contracts to DaimlerChrysler, there was no economic loss to the Dealers upon default, and they were not responsible for reimbursing DaimlerChrysler. In those circumstances, the tax court found no bad debt to assign. For a number of reasons, we reject DaimlerChrysler's assignment argument.

██ ¶ 22 First, as the tax court noted, the Dealers had no bad debt deduction to assign. They were fully compensated for the

vehicles in question. Other courts have accepted this as a basis for denying relief under similar statutes. As the Supreme Court of Ohio explained in *Chrysler Financial Co., L.L.C. v. Wilkins:*

> Prior to the sale and assignment of the retail installment contract to Chrysler, the dealer had no claim to a bad-debt deduction, because the dealer had no bad debt. After the retail installment contract was assigned to Chrysler, and the dealer had been paid in full, the dealer could not claim a bad-debt deduction. After the dealer assigned the retail installment contract to Chrysler, the customer's debt to the dealer was paid in full, including any amount owed to the dealer for sales tax. As far as the dealer is concerned, the sale of the retail installment contract to Chrysler produces the same result as if the customer had paid off the contract. Thus, the dealer never suffered any bad debt that it could assert or that Chrysler could assert as the dealer's assignee.

102 Ohio St.3d 443, 812 N.E.2d 948, 952, ¶ 25 (2004). This is a substantial but not a sole reason to reject DamilerChrysler's position in this matter. We recognize that DaimlerChrysler contends the assignment should be read to consider future defaults. Thus, we also examine the other bases for DaimlerChrysler's position.

██ ¶ 23 Second, DaimlerChrysler also cites R15–5–113(A) and (B) as statutory authority for the assignability of bad debt deductions. That regulation states:

> Sales by Trustees, Receivers, and Assignees
>
> A. Gross receipts from the sale of tangible personal property by a trustee, receiver, or assignee shall be taxable if the sale of the property in the hands of the owner would have been taxable.
>
> B. Gross receipts from the sale of tangible personal property by a trustee, receiver, or assignee shall not be taxable if the sale of the property in the hand of the owner would have been exempt.

This regulation deals with the sale of tangible property *by* an assignee. The facts are materially different here. DaimlerChrysler is

not *selling* tangible personal property as an assignee; it is an assignee of rights to property that was previously sold by the assignor. Additionally, this regulation deals with whether gross receipts should be taxable. It does not address whether a deduction based on taxes already paid can be assigned. Consequently, R15–5–113(A) and (B) do not support DaimlerChrysler's position.

¶ 24 Third, DaimlerChrysler argues the right to a tax deduction or refund is a statutory right and that Arizona has long recognized the assignability of statutory rights. *See, e.g., K.B. v. State Farm Fire & Cas. Co.,* 189 Ariz. 263, 267, 941 P.2d 1288, 1292 (App.1997) (involving assignment of claims under insurance policy); *Stephens v. Textron, Inc.,* 127 Ariz. 227, 230, 619 P.2d 736, 739 (1980) (involving assignment of worker's compensation claim); *Carpenter v. Superior Court,* 101 Ariz. 565, 567, 422 P.2d 129, 131 (1966) (involving assignment of the rights of a judgment-creditor of an insured). In Arizona, our policy is to construe tax statutes strictly against taxpayer deductions. *E.g., Ariz. Dep't of Revenue v. Raby,* 204 Ariz. 509, 511, ¶ 16, 65 P.3d 458, 460 (App. 2003) ("[T]ax deductions, subtractions, exemptions, and credits are to be strictly construed."). "[T]he presumption is against the existence of an exemption." *Hillman v. Flagstaff Cmty. Hosp.,* 123 Ariz. 124, 126, 598 P.2d 102, 104 (1979).

¶ 25 In the face of case law that requires us to narrowly construe tax deductions, we decline to apply general principles of assignment law to expand those rights. We agree with the Maine Supreme Court, in a similar case, when it found that "principles governing the interpretation of tax credit and exemption statutes should overcome more general assignment law." *DaimlerChrysler Servs. N. Amer., L.L.C. v. State Tax Assessor,* 817 A.2d, 862, 866, ¶ 15 (Me.2003). We agree generally that "[t]ax credits are conferred by legislative grace and are not assignable as a contractual right in the absence of either explicit contractual or statutory language." *Id.*[6]

¶ 26 More fundamentally, there is nothing in the language of the assignment to show the Dealers assigned any right they may have had to a bad debt deduction. As conceded by DaimlerChrysler at oral argument, the assignment by the Dealers did not transfer the Dealers' tax *liability* to DaimlerChrysler; the Dealers remained responsible for the payment of the transaction privilege tax regardless of the assignment of the installment contracts. DaimlerChrysler argues, however, that the *benefit* of potential bad debt deductions *was* assigned. We see nothing in the assignment clause of the contracts that supports this bifurcation, purportedly assigning the tax benefits but not the tax liability. As set forth earlier, the assignment clause simply provides that seller "assigns ... under the terms and conditions of a Dealer Agreement ... and in any event in accordance with the terms, conditions and warranties ... on [the] reverse side hereto." However, there is neither a "Dealer Agreement" nor a "reverse side" of the contract in the record. All we have is an assignment that is specified as "nonrecourse." Thus, on this record, DaimlerChrysler has no basis to argue that the *benefits* of a bad debt deduction were assigned while the *burdens* of tax liability itself were not.

¶ 27 Fourth, as mentioned briefly above, *supra* ¶ 18, allowing for the assignment of bad debt deductions would conflict with Arizona's statutory scheme regarding tax refunds. Arizona Revised Statutes § 42–1118(A) (Supp.2004) details the result of an overpayment of tax:

> [When] the department determines that any amount of tax, penalty or interest has been paid in excess of the amount actually due, the department shall credit the excess amount against any tax administered pursuant to this article.... If it is determined that the amount cannot be credited against a tax or installment of taxes due from the taxpayer, the department may: 1. Refund the entire amount of tax, interest and penalty, in a lump sum or in not more than five annual installments, *to the taxpayer from whom it was collected.*

6. We do not hold that a specific contractual assignment of the deduction would suffice under Arizona law based on the other considerations set forth herein.

(Emphasis added.) Thus, the refund statute clearly states that refunds will only be issued to the taxpayer from whom any excess tax was originally collected. In this case, the Dealers were the entities that paid the tax and any refund could only be issued to the Dealers. DaimlerChrysler did not pay the tax. At best, it provided funds to the Dealers who were legally obligated to pay the tax and in fact did so.

¶ 28 DaimlerChrysler responds in part by claiming it is not seeking a refund; rather, it is merely seeking to deduct the bad debts from its gross receipts generated through other business ventures in Arizona.[7] Allowing DaimlerChrysler to take bad debt deductions because DaimlerChrysler happens to have other business operations in Arizona furthers the illogical result discussed earlier. *Supra* ¶ 18. A business that was the assignee of bad debt deductions would only be able to use those deductions if it happened to have gross receipts in Arizona; a business that had no gross receipts in Arizona, but had been assigned valid bad debt deductions, would not be entitled to a refund. We are loath to create such an illogical outcome. *See State v. Sanchez*, 209 Ariz. 66, 70, ¶ 14, 97 P.3d 891, 895 (App.2004) (rejecting statutory construction that required illogical result).

¶ 29 Fifth, R15–5–2011(E)(3) allows a bad debt deduction to be assigned when the contract is "with recourse." Here, Daimler-Chrysler's own documents allowed it to select either a recourse or non-recourse assignment. It opted for non-recourse.

¶ 30 One of our principles of statutory, and thus regulatory, interpretation is that when one portion of a class is granted a specific benefit, it suggests that others in that class are not. *See State v. Roscoe*, 185

Ariz. 68, 71, 912 P.2d 1297, 1300 (1996) (" 'A well established rule of statutory construction provides that the expression of one or more items of a class indicates an intent to exclude all items of the same class which are not expressed.' ") (quoting *Pima County v. Heinfeld*, 134 Ariz. 133, 134, 654 P.2d 281, 282 (1982)); *State v. Fell*, 203 Ariz. 186, 189, ¶ 11, 52 P.3d 218, 221 (App.2002) (same). We recognize that this principle is a rule of construction to aid us and that it "is not definitive or an invariable standard of interpretation." *Boynton v. Anderson*, 205 Ariz. 45, 48, ¶ 8, 66 P.3d 88, 91 (App.2003). Thus, providing for assignability of the deduction on those contracts entered *with* recourse suggests that any bad debt deduction applying to those contracts *without* recourse is not assignable. *See Gen. Motors Acceptance Corp. v. Jackson*, 247 Ga.App. 141, 542 S.E.2d 538, 541 (2000) (holding that in specifically allowing a statutory deduction for credit card holders, the legislature denied it to others).

¶ 31 Finally, DaimlerChrysler cites several cases from other jurisdictions to support its position: *Puget Sound National Bank v. State Department of Revenue*, 123 Wash.2d 284, 868 P.2d 127 (1994), and *Chrysler Financial Co., L.L.C. v. Indiana Department of State Revenue*, 761 N.E.2d 909 (Ind. Tax Ct.2002).[8] Though portions of both these cases support DaimlerChrysler's position, they are distinguishable[9] and represent a minority view. Though there are differences among the various states' statutes, the majority rule in other jurisdictions is similar to that which we apply here. *See Chrysler Financial Co., L.L.C. v. Wilkins*, 812 N.E.2d at 951–52, ¶¶ 15–20 (precluding Chrysler from taking a bad debt deduction based on

---

7. On appeal, DaimlerChrysler nonetheless specifically asks for a "refund or deduction."

8. DaimlerChrysler also directs us to unpublished authorities, which we decline to address. *See Walden Books Co. v. Ariz. Dep't of Revenue*, 198 Ariz. 584, 589, ¶ 23, 12 P.3d 809, 814 (App.2000).

9. In *Puget Sound*, the Washington court emphasized that the definition of "seller" included every *"person "* and that the relevant statute defined a "person" as an *"assignee."* 868 P.2d at 129 (citing Wash. Rev.Code §§ 82.08.010(2),

82.04.030). In contrast, Arizona's transaction privilege tax statute does not include "assignee" in the definition of either a "person" or a "taxpayer." *See* A.R.S. § 42–5001(8), (18). In the Indiana case, *Chrysler Financial Co., L.L.C. v. Indiana Department of State Revenue*, 761 N.E.2d at 911–14, the court did not find compelling the argument that deductions should be construed strictly against taxpayers. This is in direct conflict with Arizona authority such as *Raby*, 204 Ariz. at 511, ¶ 16, 65 P.3d at 460. *Supra* ¶¶ 25–26.

an alleged assignment from car dealers); *DaimlerChrysler Servs. N. Amer., L.L.C. v. State Tax Assessor*, 817 A.2d at 865–67, ¶¶ 9–16 (finding DaimlerChrysler was not entitled to a bad debt deduction as assignee of vehicle retailer); *In re Appeal of Ford Motor Credit Co.*, 275 Kan. 857, 69 P.3d 612, 621 (2003) ("Neither the statute or regulation include the assignee of the retailer. Although not specifically limited to the retailer paying the tax, the definition of retailer is not broad enough to include the assignee of such retailer."); *SunTrust Bank, Nashville v. Johnson*, 46 S.W.3d 216, 225 (Tenn.Ct.App.2000) (precluding assignee of dealers from taking a sales tax credit that is only available to the " 'dealer who has paid the tax' ") (quoting Tenn.Code Ann. § 67–6–507(E)(1)); *Dept. of Rev. v. Bank of Amer., N.A.*, 752 So.2d 637, 643 (Fla.Dist.Ct.App.2000) (prohibiting an assignee from claiming a refund by concluding that rules governing tax statutes trump general assignment principles).

¶ 32 Thus, for these reasons, we conclude that DaimlerChrysler is not entitled to a bad debt deduction by means of an assignment. As we discuss below, *infra* ¶ 36, this is a matter for legislative, not judicial, action.

### 3. DaimlerChrysler Has Not Been Subjected to Forfeiture.

■ ¶ 33 DaimlerChrysler claims that the state now receives a windfall because it receives transaction privilege tax on a purchase price that was never paid. We reject DaimlerChrysler's assertion that R15–5–2011 works a dishonorable and improper forfeiture. *See De Almada v. Sovereign Camp, W.O.W.*, 49 Ariz. 433, 436, 67 P.2d 474, 475 (1937) ("[F]orfeitures are not favored by the law, and every reasonable presumption is against a forfeiture."). The Dealers received gross receipts upon which the transaction privilege tax was computed and paid. As noted above, the outstanding purchase price was paid in full by DaimlerChrysler to the Dealers. The Dealers' gross receipts have *not* been dissipated. There is no forfeiture.

¶ 34 As to the Arizona tax cases cited by DaimlerChrysler to support its claim of forfeiture, they are readily distinguishable. Each case involved taxpayers (not assignees) who directly paid or were directly liable for taxes in the transaction privilege or property categories. In *Pittsburgh & Midway Coal Mining Co. v. Arizona Department of Revenue*, the tax-paying contractors and coal mine directly paid their transaction privilege taxes to ADOR. 161 Ariz. 135, 136, 776 P.2d 1061, 1062 (1989). In *Wilderness World*, the river-rafting companies had paid transaction privilege taxes directly to ADOR. 182 Ariz. at 197, 895 P.2d at 109. Meanwhile, *Tucson Electric Power Co. v. Apache County* involved various utility companies who had paid the property taxes to counties in which they owned taxable property. 185 Ariz. 5, 11, 912 P.2d 9, 15 (App.1995). And *S & R Properties v. Maricopa County* concerned a variety of property owners contesting their real property taxes. 178 Ariz. 491, 496, 875 P.2d 150, 155 (App.1993).

■ ¶ 35 To the extent that DaimlerChrysler now wants the state to provide tax relief for a *debt* that *funded* tax payments, rather than the loss of gross receipts themselves, this presents a question of policy for the legislature. It is the business of the legislature, not the judiciary, to set policy. *Harrison v. Laveen*, 67 Ariz. 337, 344, 196 P.2d 456, 460 (1948) ("[T]he matter of determining what is 'good public policy' is for the executive and legislative departments . . . the courts must base their decisions on the law as it appears in the constitution and statutes."); *Winsor v. Glasswerks PHX, L.L.C.*, 204 Ariz. 303, 310, ¶ 23, 63 P.3d 1040, 1047 (App.2003) (when the "core issue is one of policy for the legislature" we "defer to the legislature in its representative capacity"). Should the legislature desire to have non-vendors such as DaimlerChrysler be able to take a bad debt deduction, it may amend the statutes to so provide.

¶ 36 To conclude on this issue, if DaimlerChrysler's claims of forfeiture are to be addressed, it should be through a legislative solution rather than a judicial one. DaimlerChrysler is entitled to no relief on this ground.

### Conclusion

¶ 37 DaimlerChrysler is not entitled to take a bad debt deduction under R15–5–2011

in its own right or as an assignee. There is also no forfeiture. As the tax court properly found, ADOR was entitled to judgment as a matter of law on these issues. Accordingly, we affirm the judgment. In addition, we deny DaimlerChrysler's request for costs and attorneys' fees on appeal pursuant to A.R.S. § 12–348 (2003).

CONCURRING: ANN A. SCOTT TIMMER, Presiding Judge, and LAWRENCE F. WINTHROP, Judge.