879 P.2d 371

U.S. XPRESS, INC., a Georgia corporation, and Southwest Motor Freight, Inc., a Tennessee corporation, Plaintiffs/Petitioners,

and

Arizona Department of Transportation, Larry S. Bonnie, Director, Arizona Department of Transportation, Thomas G. Schmitt, Acting Director, Motor Vehicle Division, Defendants/Petitioners,

v.

ARIZONA TAX COURT, the Tax Department of the Superior Court in and for the County of Maricopa, the Honorable William J. Schafer, III, Presiding Judge of the Arizona Tax Court, Respondents.

No. 1 CA–SA 94–0152 TX.

Court of Appeals of Arizona, Division 1, Department T.

Aug. 16, 1994.

Lallis, Trompeter, Tanner & Hulse by Jack B. Schiffman and Bryan Cave by Neil Vincent Wake, Phoenix, for plaintiffs/petitioners.

Grant Woods, Atty. Gen. by John William Ranby, Asst. Atty. Gen., Phoenix, for defendants/petitioners.

## OPINION

FIDEL, Judge.

In this novel proceeding, plaintiffs and defendants jointly petition this court to set aside the tax court's dismissal of the underlying tax appeal. Although plaintiffs and defendants dispute the merits of the underlying action, they jointly challenge the tax court's ruling that plaintiffs' action was not timely filed. The parties argue that the tax court misinterpreted the applicable statutes and

ask us to reinstate the action for resolution on the merits.

## BACKGROUND

Plaintiffs U.S. Xpress and Southwest Motor Freight are motor carriers subject to licensing, reporting requirements, and taxes under Ariz.Rev.Stat.Ann. ("A.R.S.") §§ 28–1599—1599.13 (1989). Defendant Arizona Department of Transportation ("ADOT") is the state agency that licenses and taxes motor carriers.

When an intermediary hired to file plaintiffs' tax reports and pay their taxes miscalculated the due date by six days, plaintiffs were assessed tax penalties and late fees. Plaintiffs appealed these assessments, first by exhausting administrative avenues, then by filing the underlying action in the tax court. ADOT moved to dismiss plaintiffs' complaint for failure to state a claim. In response, plaintiffs moved for summary judgment. In their motions, the parties debated whether plaintiffs' late reporting and tax payment were excusable as inadvertent error.

Defendants did not contest the timeliness of plaintiffs' complaint. The administrative process had ended and the penalty assessment had become due on November 9, 1992.[1] Plaintiffs had made payment under protest on February 5, 1993, less than three months thereafter, and had initiated tax court proceedings on June 2, 1993, well within a year of payment under protest. Both payment and filing met the timelines of A.R.S. § 28–1599.11(B). That subsection provides in pertinent part:

> B. A motor carrier making a payment may bring an action against the director in the superior court in Maricopa County for recovery of the amount paid if the motor carrier:
>
>   1. Pays the amount stating it is paid under protest.
>
>   2. Verifies and states the grounds for objection to the legality of the payment.

1. ADOT denied plaintiffs' motion for rehearing on October 28, 1992. Pursuant to A.R.S. § 28–1599.10(C), that decision became final and the penalty assessment became due ten days later.

The tenth day, however, fell on Saturday, November 7. The first subsequent weekday was November 9.

3. Pays the amount within *three months* after becoming due.

The motor carrier shall institute the action within *one year* after payment under protest. . . .

(Emphasis added).

The tax court, however, determined on its own initiative that subsection B was inapplicable and that plaintiffs were subject to the more restrictive timelines of A.R.S. § 28–1599.11(E). That subsection provides in pertinent part:

E. From a decision or order of the director pursuant to this article, the motor carrier may, *within thirty days* from the date of decision or order, appeal to the superior court in Maricopa county from the decision or order.

(Emphasis added). Because plaintiffs had not filed within thirty days of the final agency decision, the tax court dismissed their appeal without reaching the merits of the issue the parties had briefed.

In a published opinion, the tax court addressed the apparent conflict between subsections B and E: Subsection B, the tax court reasoned, applies only to motor carriers who have waived administrative remedies and sought relief directly in the superior court; where, by contrast, motor carriers have exhausted administrative remedies, the more restrictive deadline of subsection E applies. *U.S. Xpress, Inc. v. Arizona Dep't of Transp.*, 177 Ariz. 299, 300–01, 867 P.2d 869, 870–71 (Tax 1994).

In a series of subsequent motions and memoranda, the parties unsuccessfully urged the tax court to reverse its opinion. They then petitioned this court for relief.

## SPECIAL ACTION JURISDICTION

■ Because the tax court has published an opinion that we believe misinterprets the applicable statute, and because that opinion, until corrected, will misgovern tax appeals of motor carriers throughout the state, this matter has sufficient statewide interest to warrant special action jurisdiction and relief. *Maricopa County v. Arizona Tax Court*, 162 Ariz. 64, 65–66, 781 P.2d 41, 42–43 (App.1989). We take jurisdiction, however, only to determine the timeliness of the underlying tax appeal. We deny the parties' further request to bypass the tax court and resolve the merits of the underlying dispute.

## INTERPRETING SUBSECTIONS B AND E

If one considers only the text of A.R.S. § 28–1599.11, a conflict appears between subsections B and E. Subsection E sets a 30-day deadline for a motor carrier's superior court appeal from "a decision or order of the director." Because the underlying action is a superior court appeal from a final order of the director, subsection E appears facially to apply. Yet subsection B gives a motor carrier three months from the due date of a contested assessment to pay under protest and one year thereafter to file a superior court action to recover payment. The underlying action seeks to recover an assessment paid under protest. Thus, subsection B likewise appears facially to apply.

■ The tax court, to reconcile the conflict, concluded that subsection B applies only when the protesting carrier foregoes administrative remedies and proceeds directly to superior court. No such restriction appears, however, within subsection B or elsewhere within the text of § 28–1599.11. Nor did the tax court refer to any source external to § 28–1599.11 to support the restriction that it read into the text.

We find more persuasive petitioners' alternative reconciliation. Petitioners argue:

1. Subsection E applies to and permits only appeals of administrative decisions refusing to issue, revoking, or suspending a motor carrier tax license by the Director . . . pursuant to A.R.S. §§ 28–1599.02 and 1599.03; and

2. Subsection B authorizes and exclusively regulates appeals of assessments of motor carrier taxes or penalties pursuant to A.R.S. §§ 28–1599.06 and 1599.08.

Although this distinction, like the tax court's, is not apparent on the face of § 28–1599.11, it emerges, unlike the tax court's, from close reading of surrounding statutory text—particularly the text of § 28–1599.10.

■ "If a statute's words do not disclose legislative intent, the court must read the statute as a whole and give meaningful interpretation to all its provisions." *Devenir Assocs. v. City of Phoenix*, 169 Ariz. 500, 503, 821 P.2d 161, 164 (1991). Statutes that "relate to the same subject or have the same general purpose ... should be construed together with other related statutes, as though they constituted one law." *State ex rel. Larson v. Farley*, 106 Ariz. 119, 122, 471 P.2d 731, 734 (1970). Section 28–1599.10 governs administrative appeals and § 28–1599.11 governs superior court appeals by motor carriers aggrieved by ADOT actions relating to the motor carrier tax. These sections operate in tandem and require a harmonizing construction. *See Larson*, 106 Ariz. at 122, 471 P.2d at 734.

We begin comparison by highlighting a distinction within § 28–1599.11 between subsections B and E. Superior court review under subsection B extends only to motor carriers "making a payment." It is therefore limited to challenges of the various categories of assessments—taxes, penalties, fines, and interest—the director can require a motor carrier to pay. *See* §§ 28–1599.06 and .08. Subsection E, in contrast, speaks of appealing a "decision or order" of the ADOT director.

Now turning to § 28–1599.10, we observe that the term "assessment," the basis for subsection B review, is used repeatedly and consistently as a challengeable act separate and distinct from a "decision or order." Section 28–1599.10 provides:

A. A motor carrier aggrieved by an *assessment, decision or order* of the director under this article may within fifteen days after service of notice make a written request for a hearing in the office of the director to show cause why the *assessment, decision or order* is in error.... If the motor carrier or its agent does not request a hearing within fifteen days, the *decision or order* becomes final or the *assessment* due.

\* \* \* \* \* \*

C. If the motor carrier or its agent does not request a rehearing or the director denies the request for rehearing, the *order* becomes final or *assessment* becomes due ten days after notice.

A.R.S. § 28–1599.10 (emphasis added).

■ Of course the phrase "decision or order" in ordinary usage is broad enough to include decisions or orders relating to assessments. Yet by repetitive, contradistinctive reference, the drafters of § 28–1599.10 used "decision or order" to separately define a group of decisions or orders *not* relating to assessments—namely those refusing or revoking a motor carrier tax license. *See* §§ 28–1599.02, 28–1599.03.

■ When this contradistinctive usage is carried through to § 28–1599.11, the meaning of subsections B and E falls into place. Subsection B governs superior court actions to recover assessments paid under protest. Subsection E governs superior court actions challenging revocation or refusal to issue a tax license.

We adopt this construction principally because it arises from surrounding statutory text and brings related statutes into harmony. However, there are two further grounds for our decision.

■ First, ranging more widely within Title 28, we find that the legislature employed a parallel structure in § 28–1585, the use fuel tax counterpart of § 28–1599.11. In the use fuel statute, subsection 28–1585(B) explicitly defines the avenue of superior court appeal for those who have paid use fuel tax assessments under protest, and subsection 28–1585(E) explicitly defines a separate avenue of superior court appeal for those whose use fuel licenses are "refused, canceled or revoked." While 28–1585 is far more clearly worded than 28–1599.11, their parallel structure suggests common intent. When statutes have the same general purpose, "legislative intent ... must be ascertained not alone from the literal meaning of the wording of the statutes but also from the view of the whole system of related statutes." *Larson*, 106 Ariz. at 122, 471 P.2d at 734.

Second, we also find support for our interpretation in legislative history. Subsection B of 28–1599.11 requires payment under protest before bringing a superior court appeal;

subsection E does not. Since the Arizona Code of 1939, Arizona statutes have consistently required motor carriers to make payment under protest before challenging tax assessments in the superior court. *See* 1933 Ariz.Sess.Laws 100, § 19; 1976 Ariz.Sess. Laws 59, § 10; 1979 Ariz.Sess.Laws 203, § 7. The last of these statutes was replaced in a comprehensive revision of the motor carrier tax statutes in 1981. 1981 Ariz.Sess.Laws 207. Sections 28–1599.10 and 11 were among the replacing statutes enacted at that time. 1981 Ariz.Sess.Laws 207, § 3. The 1981 statutory revisions also introduced the requirement of tax licensing for motor carriers. This change necessitated providing an avenue of appeal for carriers aggrieved by tax licensing decisions. Considered in this context, we think it clear that subsection 28–1599.11(B) is the portion of the 1981 enactment that was intended as the successor to the historic line of Arizona statutes requiring payment under protest before challenging an assessment in the superior court. Subsection E, because it does not require payment under protest, could only have been intended to govern licensing—not assessment—appeals.

## CONCLUSION

For the reasons set forth above, we vacate the tax court's opinion, reverse its order of dismissal, and remand for proceedings consistent with this opinion.

McGREGOR and GARBARINO, JJ., concur.