55 P.3d 790

**KNIGHT TRANSPORTATION, INC.,**
**an Arizona corporation,**
**Plaintiff-Appellee,**

v.

**ARIZONA DEPARTMENT OF TRANS-PORTATION, an agency of the State of Arizona, and Victor Mendez, Director, Defendants–Appellants.**

**No. 1 CA–CV 01–0541.**

Court of Appeals of Arizona, Division 1, Department C.

Oct. 8, 2002.

---

Ryley Carlock & Applewhite By James E. Brophy, III and Lorrie L. Luellig, Phoenix, Attorneys for Plaintiff–Appellee.

Janet Napolitano, Attorney General By Richard L. Rice, Chief Counsel and Peter C. Gulatto, Assistant Attorney General, Phoenix, Attorneys for Defendants–Appellants.

## OPINION

VOSS, Judge.

¶ 1 The Arizona Department of Transportation ("ADOT") and its director appeal the superior court's determination that ADOT does not have statutory authority to assess interest on underpaid proportional registration fees on commercial vehicles registered in a state other than Arizona. We conclude that ADOT does have statutory authority to assess interest and thus reverse the judgment and remand for further proceedings.

### FACTUAL AND PROCEDURAL HISTORY

¶ 2 Knight Transportation, Inc. ("Knight") is an Arizona corporation operating a motor-carrier business in numerous states. In 1996 and 1997, Knight registered its fleet of trucks in Indiana pursuant to a registration reciprocity agreement known as the International Registration Plan (IRP).

¶ 3 The IRP creates a simplified inter-jurisdictional registration procedure for multi-state trucking operations. A participating company registers its fleet in a base state, which issues a license plate and cab card for each vehicle. The trucking company, however, must pay registration fees to each of the jurisdictions in which its fleet operates based on the number of miles driven by the fleet in that jurisdiction. *See generally Am. Trucking Assns., Inc. v. Scheiner,* 483 U.S. 266, 271–72, 107 S.Ct. 2829, 97 L.Ed.2d 226 (1987).

¶ 4 An IRP-authorized audit of Knight's 1996 and 1997 registration revealed that Knight had overpaid registration fees to some states but had underpaid fees to others, including Arizona. ADOT then informed Knight that it owed $413,635.34 in unpaid registration fees for the two years as well as $110,082.43 in interest. Knight paid the $413,635.34 but asked ADOT to abate the interest. ADOT refused.

¶ 5 After further unsuccessful efforts to avoid payment of the interest, Knight requested an administrative appeal. At the conclusion of a hearing on the matter, the administrative law judge ("ALJ") agreed that ADOT had statutory authority to assess interest on the underpaid fees.

¶ 6 Knight appealed that decision to the superior court, which concluded that ADOT did not have the authority to assess interest and reversed the administrative decision. It also awarded Knight $31,873.04 in attorney's fees. ADOT timely appealed from that judgment.

### DISCUSSION

A. *Development of Proportional Registration*

¶ 7 In 1964, the legislature enacted a provision to allow for the first time the proportional registration of commercial vehicle fleets in Arizona. *See* 1964 Ariz. Sess. Laws, ch. 14, 17–23. Under the new statute, Arizona Revised Statutes § 28–221, a trucking company could divide the number of miles driven by its vehicles in Arizona by the number of miles driven in all jurisdictions to derive the proportional fee due Arizona. Although the company's vehicles were deemed fully licensed and registered in Arizona upon payment of the proportional registration fee, § 28–221(E), the trucking company had to apply for proportional registration in every other state in which it operated.

¶ 8 The 1964 statute gave the director of the Motor Vehicle Division authority to request an audit to determine the accuracy of any proportional registration payments and to enter agreements with other states for joint audits. § 28–221(I). It also authorized the assessment of interest at six percent per year on any sums due but not paid. *Id.*

¶ 9 In 1977, the legislature enacted as part of Title 28 a new statute, § 28–225, which

authorized the director to enter agreements with other states for the apportionment, collection, and distribution of the registration fees "prescribed in §§ 28–205, 28–206 and 28–226" on commercial trucking fleets. *See* 1977 Ariz. Sess. Laws ch. 66, 250–51. The apportioned registration was in lieu of the regular, unapportioned registration and of the proportional registration described in §§ 28–221 through 28–224. § 28–225(A). The apportioned fees under agreements with other states were to be calculated, just as the in-state apportioned fees, under §§ 28–205, 28–206 and 28–226. § 28–225(B). Thus, § 28–225 did not impose a new or different set of registration fees; it also did not expressly permit audits of fleet records or interest on unpaid fees.

¶ 10 Pursuant to the authority of § 28–225, Arizona entered into the IRP, which allows a commercial trucking fleet to select and register solely in a base state and to pay apportionable fees that the base state in turn distributes to each member state entitled to a share of the fees. A registrant's fees are determined by the miles driven in each state and by the total fees to which each member state would be entitled under its own laws. We discuss specific provisions of the IRP in greater detail below.

¶ 11 With passage of § 28–225, a commercial trucking fleet operating in Arizona could choose "in-state" proportional registration under § 28–221, which gave it an Arizona license and registration, or the "out-of-state" registration allowed by § 28–225 and the IRP, which allowed a fleet to register once in a chosen base state, obtain a license and registration from that state, but also to pay through its base state the apportioned fees due to any other states in which it operated.

¶ 12 Until 1995, both § 28–221 and § 28–225 were in Title 28, chapter 2, article 1.1. In 1995, the legislature renumbered the sections, added a new Title 28, and placed the statutes in two separate articles of that Title.

After another renumbering in 1996, § 28–221 ultimately became §§ 28–2231 through 28–2239 in article 7; § 28–225 became §§ 28–2261 through 28–2269 in article 8. *See* 1995 Ariz. Sess. Laws ch. 132, § 3; 1996 Ariz. Sess. Laws ch. 76, §§ 7, 83–88.[1] We will address the significance of the renumbering below.

## B. The IRP's Impact on Arizona's Audit and Assessment Authority

■ ¶ 13 We turn first to Knight's argument that under the IRP, only its base state, Indiana, has authority to audit and assess fees and thus § 28–2261 does not, and need not, contain such authority.

¶ 14 The IRP is premised on "the reciprocal grant of rights and/or privileges to vehicles ... *properly registered under the applicable laws of the jurisdictions* which are parties to such an agreement." IRP § 242 (emphasis added). Although the IRP calculates a fee to be paid by registrants, that fee is based on the miles driven in-jurisdiction and *"the total fees required under the laws of each jurisdiction for full registration of each vehicle at the regular annual or applicable fees."* IRP § 300(A)(1), (2) (emphasis added).[2] Thus, the IRP implements the fee structures of the individual member states by collecting apportionable fees, notifying each affected state when a fleet applies for apportioned registration, and providing documentation to verify the fees assessed on behalf of each member state. *See* IRP § 408. The IRP expressly provides that "[t]his agreement does not waive any fees or taxes charged or levied by any jurisdiction in connection with the ownership or operation of vehicles." IRP § 302.

¶ 15 The IRP requires a registered fleet to maintain records and to make them available for auditing. IRP § 1500. Not only may the base state audit the registrant, but other member states, as occurred here, may do so.

---

1. In 1997, the legislature made minor amendments not material to this appeal to § 28–2261. *See* 1997 Ariz. Sess. Laws ch. 1, § 157.

2. The IRP provides, for example, that an "apportionable fee" is a "periodic recurring fee required for licensing or registering vehicles, such

as, but not limited to, registration fees, license or weight fees." IRP § 202. Arizona statutes impose registration, license, highway use, and weight fees that are collected and apportioned by the IRP. *See* §§ 28–2153, 28–5801, 28–5471, 28–5432. (1998).

IRP §§ 1600, 1606. If an audit shows an error in the fees paid, the IRP notifies affected member states. IRP § 1604. In this case, when Indiana notified Knight of the audit results, it indicated a refund was due for overpayment of Indiana's fees, but the letter also stated: "All other jurisdictions involved will be notified by our office of your audit results. *You will be billed/refunded separately by these jurisdictions.*" This statement belies Knight's contention that the base state does *all* auditing and assessing of deficiencies and thus for Arizona to have audit or assessment authority would be superfluous.

¶ 16 Finally, the IRP provides: "Assessments based on audit, *interest on assessments,* refunds, or credits ... shall be made in accordance with the statute in each jurisdiction involved with the audit of a registrant." IRP § 1702 (emphasis added). From our review of the IRP, it nowhere forecloses member states from imposing interest on underpaid assessments. We now turn to whether statutory authority exists for ADOT's interest assessment.

### C. Applicability of § 28–2238 to Article 8

 ¶ 17 ADOT argues that the interest provision of the original in-state proportional registration statutes, now in article 7, §§ 28–2231 through 28–2239, applies to the out-of-state proportional registration statutes in article 8, §§ 28–2261 through 28–2269. Both parties agree article 8 does not contain an interest assessment provision. We review *de novo* the superior court's decision on a question of statutory interpretation. *Barry v. Alberty,* 173 Ariz. 387, 389, 843 P.2d 1279, 1281 (App.1992).

¶ 18 In article 7, § 28–2238(A) requires an owner whose application for proportional registration is accepted to preserve relevant records for four years and to make the records available for audit to determine "the assessment of deficiencies or allowances for credit." Subsection (B) allows the director to

enter into agreements with other jurisdictions for joint audits of a company whose application has been accepted. And subsection (C) provides in part: "Amounts that are found to be due and owing on audit bear interest of twelve per cent from the date they should have been paid until the date of actual payment." Nothing in the language of § 28–2238 reveals whether it applies only to in-state apportioned registrations or whether it also applies to IRP apportioned registrations.

¶ 19 The superior court, however, focused on article 8, § 28–2261(A), which states:

A. In lieu of the registration required by § 28–2153, *in lieu of international proportional registration pursuant to article 7 of this chapter* and notwithstanding § 28–2321, the director may provide for the apportionment of registration and other fees for ... fleets ... that are engaged in interstate and intrastate commerce ... in accordance with a proportional registration agreement pursuant to this article.

(Emphasis added)(footnote omitted). It concluded that if the article 8 registration system was in lieu of the article 7 registration, and article 8 did not confer authority on ADOT to assess interest, ADOT was barred from demanding interest on underpaid fees.

¶ 20 ADOT concedes that § 28–2261 does not provide for separate registration fees, audits, or interest on underpayments when a company registers under the IRP. But, it asserts that the IRP collects the fees that would otherwise be due under the in-state apportionment statutes of article 7 and that the IRP-authorizing statutes were never intended to create a separate registration system independent of the record-keeping, audit, and interest assessment provisions in § 28–2238.[3]

 ¶ 21 In support of its argument, ADOT cites the fact that the in-state apportionment statutes, §§ 28–2231 through 28–2239, and the authorized, out-of-state proportional registration described in §§ 28–2261 through 28–2269 were originally in a single

---

**3.** Article 8, § 28–2262 states that an IRP-like agreement cannot "exempt a motor vehicle, owner or operator from complying with all laws, rules and regulations pertaining to the operation of motor vehicles." To operate a motor vehicle

in Arizona, the vehicle must be registered and the necessary registration, license tax, gross weight, or highway use fees must be paid, whether directly to Arizona or indirectly through the IRP.

article and that the legislature's 1995 technical re-write placing the statutes in separate articles was not intended to alter the substantive law. The legislative history shows that in 1995, Senate Bill 1364 added a new Title 28, and was called: "[T]itle 28 technical rewrite." Once signed by the Governor, the bill was transmitted to the Secretary of State and designated: "[T]itle 28 technical rewrite." "Technical" has been defined as "formal rather than practical." Webster's II New College Dictionary 1132 (1995). In our view, a technical change or rewrite connotes a non-substantive or merely formal change. "[A] court will not treat as amendatory an act which does not purport to be amendatory." *State v. Lammie,* 164 Ariz. 377, 379, 793 P.2d 134, 136 (App.1990). We decline to read into a mere "technical re-write" separating the statutes into two articles a legislative intent to change the substantive law.

¶ 22 Thus, we reject Knight's assertion that the omission of an interest provision from article 8 deprives ADOT of any legal basis to assess interest. Generally, in construing a statute, our primary purpose is to give effect to the legislature's intent. *Calik v. Kongable,* 195 Ariz. 496, 498, ¶ 10, 990 P.2d 1055, 1057 (1999). If an ambiguity exists, we consider the statute as a whole, as well as its context, subject matter, history, consequences, and purpose. *Id.* at 500, ¶ 16, 990 P.2d at 1059. Further, we attempt to give a statute "a fair and sensible meaning," *Walter v. Wilkinson,* 198 Ariz. 431, 432, ¶ 6, 10 P.3d 1218, 1219 (App.2000), and to avoid a construction that produces an absurd result. *State v. Affordable Bail Bonds,* 198 Ariz. 34, 37, ¶ 13, 6 P.3d 339, 342 (App.2000). Finally, we consider a statute's meaning in relation to other statutes with the same or similar purpose. *See Keenen v. Biles,* 199 Ariz. 266, 268, ¶ 6, 17 P.3d 111, 113 (App.2001); *U.S. Xpress, Inc. v. Ariz. Tax Court,* 179 Ariz. 363, 366, 879 P.2d 371, 374 (App.1994) (related statutes should be construed as if one law).

¶ 23 We must determine whether, given their technical separation into different articles, the interest assessment provision contained in article 7 applies to underpayments that resulted from article 8 registra-

tion. Both articles clearly relate to the same subject and have the same purpose: to secure payment of all the state-required fees in proportion to a trucking company's operations on Arizona's highways.

¶ 24 Because we attempt to construe statutes that relate to a given subject and that have the same or a very similar purpose harmoniously, we conclude that the "in lieu of" language in § 28–2261(A) allows Knight to choose proportional registration under either article 7 or article 8. But, its choice extends only to the *method* of registration. To choose article 8 apportioned registration does not exempt Knight from complying with article 7's § 28–2238, which requires those whose proportional registration is accepted to keep records, make them available for audit, and pay interest on fees that should have been paid but were not. Under either method of proportional registration, trucking companies must pay for the full privilege of operating vehicles in Arizona, and, if they have underpaid those fees, they are subject to an interest assessment.

¶ 25 This interpretation fulfills the state's interest in securing prompt, accurate, and fair payment of necessary fees by all users of our highways. To allow ADOT to assess interest only when a company chooses the article 7 method would create an unintended incentive for many companies to use the IRP and perhaps to underestimate and underpay their Arizona fees, knowing that no interest could ever accrue. Moreover, recognizing ADOT's authority to assess interest on underpayments of both in-state apportioned fees and IRP-paid fees encourages prompt payment, more accurate forecasting of future fees, and treats alike all similarly situated companies who have underpaid their fees: all must make up the deficiency and pay interest on it.

¶ 26 Our interpretation also reflects the extensive state regulation of motor vehicles and the legislature's stated intent in article 8, § 28–2262(A), that a proportional registration agreement "does not exempt a motor vehicle, owner or operator from complying with all laws, rules and regulations pertaining to the operation of motor vehicles." Every vehicle operated in Arizona must be

registered. Section 28–2153(A) states: "A person shall not operate ... on a highway a motor vehicle, trailer or semitrailer unless ... [it] has been registered." When one registers a vehicle, fees are due to the state. Section 28–2161(A)(1) requires the Director to refuse to register a vehicle or trailer unless the person pays "any motor vehicle fee, tax or other assessment, or a penalty on the fee, tax or assessment, that is due the department." When fees that are admittedly due have been only partially paid, ADOT may bill for the underpayment and assess interest accordingly.

### D. Interest Assessment as a Tax

¶ 27 Knight finally contends that the interest assessment of § 28–2238 is analogous to a tax and that statutes levying taxes should be strictly construed in favor of Knight and against ADOT. Thus, under this interpretation, the interest provisions of article 7 should not be extended to article 8.

¶ 28 Even assuming that the interest provision is analogous to a tax, we still construe the statutory scheme as a whole. *State ex rel. Ariz. Dep't of Revenue v. Phoenix Lodge No. 708, Loyal Order of Moose, Inc.,* 187 Ariz. 242, 247, 928 P.2d 666, 671 (App. 1996). We have concluded from the legislative history of articles 7 and 8 and from their related subject matter and purpose that the legislature intended that apportioned registration under the IRP be subject to § 28–2238. To hold otherwise would contravene the spirit and purpose of Arizona's proportional registration statutes by allowing those that register out-of-state but operate vehicles in Arizona to avoid interest payments for underpaid fees. Nothing suggests that the legislature intended such a result.

### E. Attorney's Fees

¶ 29 The superior court awarded Knight its attorney's fees pursuant to § 12–348(A)(2)(Supp.2001)(fees shall be awarded to a party other than the state that prevails in review of state agency decision). Because Knight is no longer the prevailing party, we vacate the award of fees.

### CONCLUSION

¶ 30 Knight had a choice in how to proportionally register the fleet it operates in Arizona, but having chosen the IRP does not exempt Knight from application of all laws applicable to motor vehicles in this state. The legislative history of the proportional registration statutes, their purpose, and their policy lead to the conclusion that the legislature did not intend to restrict ADOT's authority to assess interest on underpaid registration fees only to vehicles registered under the in-state apportionment statutes of article 7. Just as if it had chosen the in-state apportionment, Knight must pay all fees authorized by state law. Accordingly, we reverse the superior court's judgment and remand this case for proceedings consistent with this opinion.

CONCURRING: ANN A. SCOTT TIMMER, Presiding Judge, and JEFFERSON L. LANKFORD, Judge.