65 P.3d 458

**ARIZONA DEPARTMENT OF REVENUE, Plaintiff–Appellee,**

v.

**William L. RABY and Norma S. Raby, individually, and as husband and wife, Defendants–Appellants.**

No. 1 CA–TX 01–0004.

Court of Appeals of Arizona, Division 1, Department T.

March 27, 2003.

Terry Goddard, Attorney General By Christine Cassetta, Lisa Wood, Assistant Attorney General, Phoenix, Attorneys for Plaintiff–Appellee.

Raby Law Office By Burgess J.W. Raby, Tempe, Attorneys for Defendants–Appellants.

## OPINION

HALL, Judge.

¶ 1 William L. Raby and Norma S. Raby ("the Rabys") appeal from a summary judgment that dismissed their claim for a refund of Arizona individual income taxes attributable to a claimed subtraction that the Arizona Department of Revenue ("ADOR") disallowed in the Rabys' amended joint return for tax year 1994. The issue is whether the

Rabys, who had equal community property interests in the sums that the Arizona State Retirement System ("Retirement System") paid as a result of Mr. Raby's retirement from state employment, were each entitled under Arizona Revised Statutes ("A.R.S.") section 43–1022(2)(b) (1994) to exclude $2,500.00 of those payments in computing their Arizona adjusted gross income for 1994. As did the tax court, we conclude that the Rabys were only entitled to one $2,500.00 subtraction. Accordingly, we affirm.

## FACTS AND RELEVANT PROCEDURE

¶ 2 The relevant facts are not disputed. The Rabys were married and resided in Arizona at all times material to this appeal. All their income has been community income. Mrs. Raby has been a homemaker since 1957.

¶ 3 Mr. Raby taught at the University of Arizona from 1957 to 1970 except for a three-year hiatus beginning in 1960. Mr. Raby taught at Arizona State University from 1981 until his retirement in 1993. During Mr. Raby's entire period of employment at the Universities, the state withheld from his compensation certain sums calculated by law that were paid to the Retirement System on Mr. Raby's account along with matching sums funded by the state.

¶ 4 Upon Mr. Raby's retirement in 1993, the Rabys elected to receive from the Retirement System two 100 percent joint-and-survivor annuities relating to Mr. Raby's respective periods of service with the University of Arizona and Arizona State University. The Retirement System electronically deposits the annuity payments into the Rabys' community property bank account.

¶ 5 For 1994 the taxable total of these payments was $7,316.58. In their joint Arizona individual income tax return for 1994, the Rabys claimed a single exclusion of $2,500.00 from their Retirement System annuity payments and calculated their Arizona individual income tax liability accordingly. In an amended return filed April 14, 1999, however, the Rabys claimed a refund of $160.00 for tax year 1994 on the theory that they had actually been entitled to two exclusions of $2,500.00 each.

¶ 6 ADOR disallowed the refund claim. ADOR's hearing officer denied the Rabys' resulting protest. The Rabys appealed to the Arizona State Board of Tax Appeals ("the Board"). The Board vacated ADOR's final order and determined that the Rabys were each entitled to an exclusion of $2,500.00 for tax year 1994, for a total of $5,000.00.

¶ 7 ADOR appealed the Board's order to the tax court pursuant to A.R.S. § 42–1254 (1999). On cross-motions for summary judgment the tax court ruled for ADOR. The court determined that even though the Retirement System annuity payments constituted community property, only Mr. Raby "received" them within the meaning of A.R.S. § 43–1022(2)(b). From formal judgment, the Rabys appeal. We have jurisdiction. A.R.S. § 12–2101(B) (1994).

## ANALYSIS

¶ 8 Arizona imposes an annual charge on the income of every resident of the state, commonly known as an income tax. *See generally* A.R.S. §§ 43–1001 to –1090.01 (1998 and Supp.2002). The tax is calculated as a specified percentage of each taxpayer's "taxable income." A.R.S. §§ 43–1011 to –1012 (Supp.2002).

¶ 9 The process of calculating an Arizona resident's taxable income begins with his or her "Arizona gross income." A resident individual's Arizona gross income is defined as his or her "federal adjusted gross income for the taxable year, computed pursuant to the internal revenue code." A.R.S. § 43–1001(2) (Supp.2002). This figure is then modified using the applicable additions and subtractions provided by A.R.S. §§ 43–1021 to –1022 (1994) to yield the taxpayer's "Arizona adjusted gross income." A.R.S. § 43–1001(1). "Taxable income" is derived by reducing this figure by any applicable deductions or exemptions provided by A.R.S. §§ 43–1041 to –1043 (Supp.2002). The taxpayer's ultimate liability is calculated by applying A.R.S. § 43–1011 (percentage scales) or § 43–1012 (optional tax table) and reducing the result by any credits to which the taxpayer may be

entitled under A.R.S. §§ 43–1071 to –1090.01 (1998 and Supp.2002).

¶ 10 Section 43–1022(2)(b), Arizona Revised Statutes, provides one of the "subtractions" from Arizona gross income that may apply in the process of calculating Arizona adjusted gross income:

In computing Arizona adjusted gross income, the following amounts shall be subtracted from Arizona gross income:

. . . .

2. Benefits, annuities and pensions in an amount totaling not more than two thousand five hundred dollars received from one or more of the following:

. . . .

(b) The state retirement system . . . .

¶ 11 The Rabys' fundamental thesis on appeal is that by virtue of Arizona's community property laws, *see* A.R.S. §§ 25–211, –213, –214, –215, –217 (2000), any sum that the Retirement System pays to one spouse is "received" by both spouses in equal halves. Therefore, the Rabys argue, the entire half "received" by each spouse up to a maximum of $2,500.00 may be subtracted from the Arizona gross income of each in calculating Arizona adjusted gross income. The Rabys conclude that because they reported their annual income in a joint return, they were entitled to subtract $5,000.00 under § 43–1022(2)(b) rather than the $2,500.00 they originally claimed.

¶ 12 ADOR points out, however, that Mr. Raby, as payee of the pension plan, is the spouse on whose account the sums are paid. *See, e.g.,* A.R.S. § 38–757(B) (2001) (providing that "a member who meets the requirements . . . shall *receive* a monthly life annuity") (emphasis supplied). Thus, according to ADOR, he actually "receives" the annuity payments in the manner contemplated by § 43–1022(2)(b).

¶ 13 We have no quarrel with the Rabys' contention that Mr. Raby's retirement benefits are a form of deferred compensation acquired during the Rabys' marriage, *see Koelsch v. Koelsch,* 148 Ariz. 176, 181, 713 P.2d 1234, 1239 (1986), and that Mrs. Raby therefore has a proprietary interest in the benefits equal to that of her husband, *Ells-worth v. Ellsworth,* 5 Ariz.App. 89, 92, 423 P.2d 364, 367 (1967). The question before us, however, is not truly one of community property law. Rather, it is one of state tax law.

¶ 14 To resolve this matter, we must determine the scope intended by the legislature for the subtraction provided by § 43–1022(2)(b). "The primary rule of statutory construction is to find and give effect to legislative intent." *Mail Boxes, Etc. v. Indus. Comm'n of Ariz.,* 181 Ariz. 119, 121, 888 P.2d 777, 779 (1995). "To determine intent, we look first at the language of the statute and give the words used their ordinary meaning." *Davis v. Ariz. Dep't of Revenue,* 197 Ariz. 527, 529, ¶ 9, 4 P.3d 1070, 1072 (App.2000).

¶ 15 We find that the language of § 43–1022(2)(b) is susceptible to different interpretations. For example, when the statute is applied to a married couple to whom a state governmental payor has made payments on only one spouse's account, one could conclude, as do the Rabys, that each spouse "receives" half of every payment within the meaning of § 43–1022(2)(b) when, as here, the sums paid represent a property right acquired entirely during the marriage. However, based on the statutory language alone, one could also reasonably conclude, as does ADOR, that the retirement payments are received by the member spouse for the benefit of the community. The statute is thus ambiguous. *See Hayes v. Continental Ins. Co.,* 178 Ariz. 264, 268, 872 P.2d 668, 672 (1994) (ambiguity exists in statute if meaning or interpretation of statute's terms is uncertain). In construing an ambiguous statute, we consider the statute as a whole and attempt to give it a fair and sensible meaning while avoiding a construction that produces an absurd result. *Knight Transp., Inc. v. Ariz. Dep't of Transp.,* 203 Ariz. 447, 452, ¶ 22, 55 P.3d 790, 795 (App.2002).

¶ 16 We begin our analysis by noting that tax deductions, subtractions, exemptions, and credits are to be strictly construed. *See Ebasco Servs., Inc. v. Ariz. State Tax Comm'n,* 105 Ariz. 94, 99, 459 P.2d 719, 724 (1969) (deductions) (relying on general rule that "every interpretation shall be against

exemptions from taxing statutes") (quoting *J.H. Welsh & Son Contracting Co. v. Ariz. State Tax Comm'n,* 4 Ariz.App. 398, 403, 420 P.2d 970, 975 (1966)); *Davis,* 197 Ariz. at 529–30, ¶ 12, 4 P.3d at 1072–73 (credits).

¶ 17 Two additional rules of construction guide our analysis. First, although an administrative agency's interpretation of a statute that it enforces does not bind the courts, a reviewing court generally accords "great weight" to the agency's construction. *See Marlar v. State,* 136 Ariz. 404, 411, 666 P.2d 504, 511 (App.1983); *Davis,* 197 Ariz. at 530, ¶ 14, 4 P.3d at 1073. Second, the construction that an agency places on a statute it administers, if acquiesced in for a long period of time, will not be disturbed unless manifestly erroneous. *Industrial Comm'n v. Harbor Ins. Co.,* 104 Ariz. 73, 76, 449 P.2d 1, 4 (1968); *State ex rel. Ariz. Dep't of Revenue v. Magma Copper Co.,* 138 Ariz. 322, 326, 674 P.2d 876, 880 (App.1983). *See State ex rel. Ariz. Dep't of Revenue v. Short,* 192 Ariz. 322, 324–25, ¶ 13, 965 P.2d 56, 58–59 (App. 1998) (applying presumption that when it reenacts a statute, legislature ratifies previous administrative interpretation of it).

¶ 18 As originally enacted as part of the Arizona Income Tax Act of 1978, § 43–1022 provided an unlimited exclusion for state and local retirement benefits, but limited a corresponding exclusion for United States Civil Service retirement annuities to $2,500.00. *Compare* former A.R.S. § 43–1022(3) ("[b]enefits, annuities and pensions received from the state retirement system ...") *with* former A.R.S. § 43–1022(4) ("[i]ncome received as annuities under the United States civil service retirement system ... in an amount not to exceed two thousand five hundred dollars"). 1978 Ariz. Sess. Laws ch. 213, § 2. As reflected by the Arizona individual tax return forms (Form 140) and related instruction manuals during the effective period for former § 43–1022(4), ADOR interpreted the limited exclusion for civil service pensions as permitting a married couple one $2,500.00 exclusion per annuitant regardless whether the return was filed singly or jointly. For

example, ADOR's 1984 manual for Form 140 instructed:

> Enter ... the amount of your U.S. Civil Service annuity or disability pension ... included as income in your federal return, or $2,500, whichever is smaller. This $2,500 is allowable for each annuity which you receive; thus, a husband and wife both receiving a U.S. Civil Service pension would be allowed two $2,500 exclusions.

ADOR's 1988 instructions for Form 140 contained similar language. These forms and instructions over the period 1978 through 1988 reflect a consistent interpretation by ADOR that the $2,500.00 exclusion for United States Civil Service annuities could be subtracted only once per annuity. *Cf. Hamilton v. State,* 186 Ariz. 590, 594–95, 925 P.2d 731, 735–36 (App.1996) (holding that ADOR's definition of "adjusted gross income" implicit in ADOR Form 140 PTC sufficiently fulfilled ADOR's statutory duty to define that term).

¶ 19 In 1989, the United States Supreme Court held that the Michigan Income Tax Act, which similarly discriminated in favor of state and local government employees by exempting all of their retirement benefits from state taxation while exempting only a portion of retirement benefits paid to former federal employees, violated the doctrine of intergovernmental tax immunity. *Davis v. Michigan Dep't of Treasury,* 489 U.S. 803, 817, 109 S.Ct. 1500 (1989). The Court stated that the taxpayer's claim for prospective relief, which could be resolved "either by extending the tax exemption to retired federal employees (or to all retired employees), or by eliminating the exemption for retired state and local government employees[,]" was a question of state law that should be resolved by Michigan courts. *Id.* at 818.

¶ 20 In response, the Arizona Legislature amended § 43–1022 to apply the $2,500.00 limit to "[b]enefits, annuities and pensions ... received from ... the state retirement system ..." as well as to those from the United States Government. A.R.S. § 43–1022(3)(a)–(b), as amended by 1989 Ariz. Sess. Laws ch. 312, § 12.[1] Accordingly, Part

---

1. Benefit, annuity, and pension subtractions were renumbered from subparagraph 3 to subparagraph 2 of A.R.S. § 43–1022 after the amendment by 1991 Ariz. Sess. Laws ch. 155, § 8.

C12 of the 1989 Form 140 provided an exclusion for federal, Arizona state, or local pensions (up to $2,500 per taxpayer). In the accompanying instructions, ADOR's explanation of the scope of the exemption was consistent with that given in previous years: "If both you and your spouse receive such pension income, each of you is allowed to subtract the amount you received or $2,500, whichever is less."

¶21 Three years later ADOR adopted a version of Arizona Administrative Code ("A.A.C.") R15–2–1022.01 effective July 30, 1992,[2] that focused for the first time on the state and federal benefits exclusions in § 43–1022(2). Since that date, the governing rule has interpreted § 43–1022(2)(a) and (b) as follows:

An individual is allowed to subtract up to $2,500.00 per taxable year from Arizona gross income for income received from sources as delineated in A.R.S. § 43–1022(2)(a) and (b).

1. An individual receiving income from more than 1 such source shall only subtract a total of $2,500.00 for all such income received during the taxable year.

2. The amount allowed as a subtraction is calculated per individual. The allowable subtraction for a married-filing-joint return when both spouses receive income from 1 or more such sources is determined based on the actual amount of such income which is received by each individual but not to exceed $2,500.00 per individual.

3. The aggregate subtraction allowed for purposes of individuals filing married-filing-separate returns shall not exceed the limitations as delineated in this rule.

A.A.C. R15–2C–301, as recodified June 2, 2000.

¶22 The Rabys argue that this rule incorporates and retains the ambiguity of § 43–1022(2)(b) without resolving it. We disagree because the Rabys' construction of § 43–1022(2)(b) would render subparagraph 2 of A.A.C. R15–2C–301 entirely superfluous, a result that we seek to avoid. *See Williams v. Thude*, 188 Ariz. 257, 259, 934 P.2d 1349, 1351 (1997) ("Each word, phrase, clause, and sentence [of a statute] must be given meaning so that no part will be void, inert, redundant, or trivial.") (citation and emphasis omitted); *Kimble v. City of Page*, 199 Ariz. 562, 565, ¶19, 20 P.3d 605, 608 (App.2001) (principles of statutory construction also apply to administrative rules and regulations).

¶23 Under the Rabys' interpretation of A.A.C. R15–2C–301, each spouse is an "individual" deemed to "receive" half of all retirement benefit payments made on the account of the other spouse. Applying this interpretation to the first sentence of A.A.C. R15–2C–301 would yield the conclusion that the Rabys advocate: a spouse whose only retirement benefits were those "received" as a community half of the benefits paid to the other spouse on his or her own account would be entitled to a separate subtraction for that half to a maximum of $2,500.00 annually. Further, again under the Rabys' interpretation, subparagraph 1 of A.A.C. R15–2C–301 would necessarily mean that if each spouse separately "received" state retirement benefits on his or her own account, each would still be entitled to a subtraction of no more than $2,500.00. Thus, both the first sentence and the first subparagraph of the rule could accommodate the Rabys' interpretation.

¶24 A problem arises, however, when the Rabys' interpretation is applied to subparagraph 2. The sole function of subparagraph 2 of A.A.C. R15–2C–301 is to articulate the principle that "when both spouses receive income from 1 or more such sources[,]" the subtraction to which each is entitled may not exceed $2,500.00. But this principle would already necessarily follow from the Rabys' interpretation as applied to A.A.C. R15–2C–

**2.** A.A.C. R15–2–1022.01 was adopted and renewed on an emergency basis for three successive ninety-day periods. Effective June 25, 1993, it was adopted permanently. In 2000, A.A.C. R15–2–1022.01 was recodified with virtually identical language as A.A.C. R15–2C–301. *Arizona Administrative Code* Supp. 99–3 (September 30, 1999), historical note, at 19; *Arizona Administrative Code* Supp. 01–04 (December 31, 2001), historical note, at 10.

301 and subparagraph 1, and subparagraph 2 would be rendered superfluous.

¶ 25 Instead, subparagraph 2 acquires a useful function and meaning in the instance of married taxpayers filing a joint return only if the "individual" in A.A.C. R15–2C–301 is interpreted as referring to the person on whose account retirement payments are made, and "receive" is limited to receipt by that "individual" on his or her own account. Thus interpreted, A.A.C. R15–2C–301 and subparagraph 1 provide that a spouse who receives state retirement benefits from one or more sources on his or her own account may subtract the aggregate of such benefits only to a maximum of $2,500.00. Subparagraph 2 of A.A.C. R15–2C–301 then contributes the distinct principle that when both spouses receive state retirement benefits on their own account, the allowable subtraction for each is the respective total each receives individually on his or her own account to a maximum of $2,500.00, or up to $5,000.00 for the two jointly. We therefore construe the terms "individual" and "receive" in A.A.C. R15–2C–301 as does ADOR, thus giving meaning to all its provisions.[3]

¶ 26 We further note that in approximately thirty-five amendments of § 43–1022 enacted since its adoption in 1978, the legislature has not changed ADOR's consistent, long-standing administrative interpretation of § 43–1022(2). That interpretation accords with the statutory language, the rule requiring strict construction of tax subtractions, and common sense. Therefore, the judgment is affirmed.

CONCURRING: E.G. NOYES, JR., and WILLIAM F. GARBARINO, Judges.

---

**3.** Responding to a hypothetical question from the tax court regarding the application of § 43–1022(2)(b) were the Rabys to divorce, ADOR responded that "[t]hey would each be entitled to [the subtraction]." On appeal, the Rabys contend that they should not be penalized for remaining married. Based on our review of the transcript, it is unclear to us whether ADOR's position was that the Rabys would each be entitled to exclude $2,500.00 (for a total exclusion of $5,000.00) or that the aggregate subtraction claimed by each of them could not exceed $2,500.00. In any event, the facts of this case do not require us to reach that issue.